## FORTSON GROCERY CO. v. PRITCHARD RICE MILLING CO. (No. 2254.)

(Court of Civil Appeals of Texas. Texarkana. April 16, 1920. Rehearing Denied April 29, 1920.)

**1. Sales 87(3)—Evidence held to warrant finding that buyer was to furnish shipping instructions.**

In action by buyer of rice for failure to deliver, evidence *held* to warrant finding that by terms of contract buyer was to furnish shipping instructions before seller was to ship or deliver.

**2. Sales 181(11)—Evidence held to warrant finding shipping instructions were to be furnished within reasonable time.**

In action by buyer of rice for failure to deliver, evidence *held* to warrant finding it was intention of parties, when seller acquiesced in buyer's request for more time in which to move rice, that shipping instructions should be furnished seller within reasonable time thereafter.

**3. Sales 153—Letter held a demand that buyer furnish shipping instructions within reasonable time.**

Where buyer of rice wrote seller it was crowded, and would like more time to move rice, to which seller replied it would be glad if buyer would furnish shipping instructions at earliest opportunity, letter of seller, a grant to buyer of reasonable time in which to furnish shipping instructions, was also demand buyer furnish shipping instructions within that time.

**4. Sales 152—Failure to furnish shipping instructions within reasonable time terminated contract at seller's option.**

Where buyer of rice did not give seller shipping directions, but requested and received extension for reasonable time, seller's letter, granting extension, constituting also demand for shipping instructions within a reasonable time, and buyer did not furnish instructions within such time, seller could treat contract as canceled and of no effect without further dealings with buyer.

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by the Fortson Grocery Company against the Pritchard Rice Milling Company. From judgment for defendant, plaintiff appeals. Affirmed.

This was a suit by the grocery company against the milling company for damages for an alleged breach by the latter of a contract to sell and deliver a car load of rice to the former. From the testimony at the trial and findings of the court below it appears that on November 8, 1916, the grocery company at Corsicana and the milling company at Houston entered into a contract in writing

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

whereby the latter agreed: (1) To sell the former a carload (40,000 pounds) of rice of a specified grade at 4 cents a pound, less brokerage; and (2) to deliver same f. o. b. the cars at Houston when the grocery company furnished it shipping instructions. No time within which such instructions were to be furnished was specified in the contract. The grocery company contended that the time was optional with it, but the court found that a custom and usage, binding on the parties, fixed the 10 days following the making of the contract as the time within which the grocery company was to furnish the shipping instructions. November 10, and again December 7, 1916, the milling company by letter requested the grocery company to furnish the instructions, and, receiving no reply, on December 18 wrote the grocery company, inquiring if it was its intention to repudiate the contract, and advising, if it was, that it would sell the rice for its (the grocery company's) account. December 19 the grocery company replied that it did not intend to repudiate the contract, stated that it was crowded for room in which to store the rice, and asked the milling company to give it "a little more time" in which to move same. December 20 the milling company replied, stating that it, too, was crowded for room, and added that it would be glad if the grocery company would furnish it shipping instructions "at the earliest · opportunity." There was no other communication between the parties until March 30, 1917, when the grocery company wrote the milling company, ordering the rice shipped and giving shipping instructions. At that time the value of rice had advanced practically 100 per cent. beyond the value it had at the time the contract was made. April 2, 1917, the milling company, replying to the grocery company's letter of March 30, said, "It is true," quoting, "we sold you a car of rice last October, but you refused to accept it and sale was canceled long ago." However, the parties never agreed on a cancellation of the contract, and the grocery company did not know before it received the letter last referred to that the milling company expected to treat it as no longer binding on it. The trial court found that, at the time the milling company acquiesced in the grocery company's request for "a little more time in which to move the rice," it was "the intention of the parties that the grocery company should still furnish the milling company shipping instructions within a reasonable time," and further found that—·

"Taking into consideration the character of the commodity, the fluctuation of its market price, and the intention of the parties, both buyer and seller, as reflected by their letters, telegrams, and conduct, from December, 1916, to April, 1917, or more than three months, was an unreasonable time for the grocery company to wait to furnish the milling company shipping instructions on said car of rice."

Being of the opinion that the milling company was "justified," quoting, "in considering the order canceled," and that no obligation rested on it "to notify the grocery company of such cancellation," the trial court rendered judgment that the grocery company take nothing by its suit.

M. M. Crane, of Dallas, and J. S. Simkins and R. E. Prince, both of Corsicana, for appellant. ·

Gill, Jones, Tyler & Potter, of Houston, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The assignment, attacking as unauthorized by the testimony the finding of the trial court that by the terms of the contract the grocery company "was to furnish shipping instructions before" the milling company "was to ship or deliver the car of rice," is overruled. Not only was there testimony which warranted the finding, but the grocery company in its petition alleged that by the terms of the contract it was to "appoint the time for the delivery" of the rice.

[2] The assignment, attacking on a like ground the finding that it was the intention of the parties when, to wit, December 20, 1916, the milling company acquiesced in the request of the grocery company for "a little more time" in which to move the rice, that shipping instructions should be furnished the former company within a reasonable time thereafter, also is overruled. The milling company having admitted in its pleadings that it acquiesced in the grocery company's request for more time in which to furnish shipping instructions, and the additional time not being specified otherwise than as "a little more time," the trial court had a right, and perhaps was bound, to say that the parties meant that the shipping instructions were to be furnished within a reasonable time after the milling company granted the grocery company's request. 2 Elliott on Contracts, § 1628; 3 Elliott on Contracts, § 1877.

The court below found, and the finding is not attacked in the assignments, that the act of the grocery company in furnishing milling company shipping instructions March 30, 1917 (more than three months after it requested and the milling company granted it "a little more time" in which to move the rice), was not performance by it of its undertaking to furnish such instructions within a reasonable time. The court further found that the parties did not agree on a cancellation of the contract, and that the milling company did not give the grocery company "notice of its intention to rescind the contract."

It appears, therefore, that the case presented by the record is that the grocery company, being bound by the contract to furnish the milling company shipping instructions within a reasonable time after December 20, 1916, failed to do so, whereupon the milling company, without notice to the grocery company of its intention to do so, treated the contract as no longer binding on it. Whether on the case so presented the judgment in favor of the milling company was warranted depends (1) on whether the milling company was bound, before it was entitled to treat the contract as no longer binding on it (not to notify the grocery company of its intention to treat the contract as at an end as the grocery company seems to contend it was, but) to demand of the grocery company that it furnish the shipping instructions, and (2) if it was, whether it appeared that it had made such a demand.

[3] If, as the grocery company assumes to be true, the milling company was in the attitude of having waived the default of the grocery company in failing to furnish the shipping instructions within the time, to wit, 10 days, fixed by the usage and custom the court found to exist, we are inclined to agree with it in its contention, if it is that the milling company did not have a right to treat the contract as at an end until after it had demanded performance by the grocery company, and that company had failed to comply with the demand within a reasonable time. As, however, we are of the opinion it appeared that the milling company in its letter of December 20 demanded performance by the grocery company of its undertaking to furnish shipping instructions, it is not necessary that we should decide the question. If said letter should be construed, as it was by the parties and the trial court, as a grant to the grocery company of a reasonable time after its date in which to furnish the shipping instructions, we think it also should be construed as a demand that the grocery company furnish the shipping instructions within that time. The letter was in reply to one of December 19 by the grocery company saying it was "very crowded at present," quoting, "and will thank you to give us a little more time in which to move this car," and was as follows:

"Your favor of the 19th received. Note that you are very much crowded for room at the present time and requesting that we delay shipment. We are also crowded for room ourselves, and will be glad if you will furnish us shipping instructions at the earliest opportunity."

[4] Construed in the light of the circumstances of the case and the rule of law the grocery company invokes, we think the fair meaning of the last clause in the letter, to wit, "will be glad if you will furnish us shipping instructions at the earliest opportunity," was, and that the grocery company should be held to have understood it to be, a demand on it to furnish the shipping instructions within a reasonable time after it received the letter. Before that time the milling company had repeatedly demanded of the grocery company that it comply with its undertaking to furnish the shipping instructions, and, clearly, the grocery company was in default because of its failure to do so. The milling company would have been within its rights had it then refused to recognize the contract as any longer binding on it. The effect of the letter in question was, we think, to advise the grocery company that it would instead treat the contract as binding on it, but would expect the grocery company to furnish the shipping instructions within a reasonable time thereafterwards.

As we view it, there is no error in the judgment, and it is affirmed.