**INTERNATIO–ROTTERDAM, INC.,**
**Plaintiff-Appellant,**

v.

**RIVER BRAND RICE MILLS, INC.,**
**Defendant-Appellee.**

**No. 126, Docket 24592.**

United States Court of Appeals
Second Circuit.

Argued Jan. 7–8, 1958.

Decided Sept. 12, 1958.

Peter J. Kooiman, of Abberley, Kooiman & Amon, New York City (Abberley, Kooiman & Amon, and Frank Marcellino, New York City, on the brief), for plaintiff-appellant.

John E. Haigney, of Ide & Haigney, New York City (Ide & Haigney, and Peter T. Rado, New York City, on the brief), for defendant-appellee.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

Appeal from the United States District Court, Southern District of New York, Walsh, Judge, upon the dismissal of the complaint after plaintiff's case was in.

The defendant-appellee, a processor of rice, in July 1952 entered into an agreement with the plaintiff-appellant, an exporter, for the sale of 95,600 pockets of rice. The terms of the agreement, evidenced by a purchase memorandum, indicated that the price per pocket was to be "$8.25 F.A.S. Lake Charles and/or Houston, Texas"; that shipment was to be "December, 1952, with two weeks call from buyer"; and that payment was to be by "irrevocable letter of credit to be opened immediately payable against" dock receipts and other specified documents. In the fall, the appellant, which had already committed itself to supplying this rice to a Japanese buyer, was unexpectedly confronted with United States export restrictions upon its December shipments and was attempting to get an export license from the government. December is a peak month in the rice and cotton seasons in Louisiana and Texas, and the appellee became concerned about shipping instructions under the contract, since congested conditions prevailed at both the mills and the docks. The appellee seasonably elected to deliver 50,000 pockets at Lake Charles and on December 10 it received from the appellant instructions for the Lake Charles shipments. Thereupon it promptly began shipments to Lake Charles which continued until December 23, the last car at Lake Charles being unloaded on December 31. December 17 was the last date in December which would allow appellee the two week period provided in the contract for delivery of the rice to the ports and ships designated. Prior thereto, the appellant had been having difficulty obtaining either a ship or a dock in this busy season in Houston. On December 17, the appellee had still received no shipping instructions for the 45,600 pockets destined for Houston. On the morning of the 18th, the appellee rescinded the contract for the Houston shipments, although continuing to make the Lake Charles deliveries. It is clear that one of the reasons for the prompt cancellation of the contract was the rise in market price of rice from $8.25 per pocket, the contract price, to $9.75. The appellant brought this suit for refusal to deliver the Houston quota.

The trial court, in a reasoned but unreported opinion which dealt with all phases of the case, held that New York would apply Texas law. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R. 2d 246. We think this ruling right, but will not discuss the point because it is conceded that no different result would follow from the choice of Louisiana law.

The area of contest is also considerably reduced by the appellant's candid concession that the appellee's duty to ship, by virtue of the two-week notice provision, did not arise until two weeks after complete shipping instructions had been given by the appellant. Thus on brief the appellant says: "[w]e concede (as we have done from the beginning) that on a fair interpretation of the contract appellant had a duty to instruct appellee by December 17, 1952 as to the place to which it desired appellee to ship —at both ports, and that, being late with its instructions in this respect, appellant could not have demanded delivery (at either port) until sometime after December 31, 1952." This position was taken, of course, with a view to the contract provision for shipment "December, 1952": a two-week period ending December 31 would begin to run on December 17. But although appellant concedes that the two weeks' notice to which appellee was entitled could not be shortened by the failure to give shipping instructions on or before December 17, it stoutly insists that upon receipt of shipping instructions subsequent to December 17 the appellee thereupon became obligated to deliver within two weeks thereafter. We do not agree.

It is plain that a giving of the notice by the appellant was a condition precedent to the appellee's duty to ship.

Corbin on Contracts, Vol. 3, § 640. Id. § 724. Obviously, the appellee could not deliver free alongside ship, as the contract required, until the appellant identified its ship and its location. Jacksboro Stone Co. v. Fairbanks Co., 48 Tex.Civ. App. 639, 107 S.W. 567; Fortson Grocery Co. v. Pritchard Rice Milling Co., Tex. Civ.App., 220 S.W. 1116. Thus the giving of shipping instructions was what Professor Corbin would classify as a "promissory condition": the appellant promised to give the notice and the appellee's duty to ship was conditioned on the receipt of the notice. Op. cit. § 633, p. 523, § 634, footnote 38. The crucial question is whether that condition was performed. And that depends on whether the appellee's duty of shipment was conditioned on notice *on or before December 17*, so that the appellee would have two weeks wholly within December within which to perform, or whether, as we understand the appellant to contend, the appellant could perform the condition by giving the notice later in December, in which case the appellee would be under a duty to ship within two weeks thereafter. The answer depends upon the proper interpretation of the contract: if the contract properly interpreted made shipment *in December* of the essence then the failure to give the notice on or before December 17 was nonperformance by the appellant of a condition upon which the appellee's duty to ship in December depended.

In the setting of this case, we hold that the provision for December delivery went to the essence of the contract. In support of the plainly stated provision of the contract there was evidence that the appellee's mills and the facilities appurtenant thereto were working at full capacity in December when the rice market was at peak activity and that appellee had numerous other contracts in January as well as in December to fill. It is reasonable to infer that in July, when the contract was made, each party wanted the protection of the specified delivery period; the appellee so that it could schedule its production without undue congestion of its storage facilities and the appellant so that it could surely meet commitments which it in turn should make to its customers. There was also evidence that prices on the rice market were fluctuating. In view of this factor it is not reasonable to infer that when the contract was made in July for December delivery, the parties intended that the appellant should have an option exercisable subsequent to December 17 to postpone delivery until January. United Irr. Co. v. Carson Petroleum Co., Tex.Civ.App., 283 S.W. 692; Steiner v. United States, D.C., 36 F.Supp. 496. That in effect would have given the appellant an option to postpone its breach of the contract, if one should then be in prospect, to a time when, so far as could have been foreseen when the contract was made, the price of rice might be falling. A postponement in such circumstances would inure to the disadvantage of the appellee who was given no reciprocal option. Further indication that December delivery was of the essence is found in the letter of credit which was provided for in the contract and established by the appellant. Under this letter, the bank was authorized to pay appellee only for deliveries "during December, 1952." It thus appears that the appellant's interpretation of the contract, under which the appellee would be obligated, upon receipt of shipping instructions subsequent to December 17, to deliver in January, would deprive the appellee of the security for payment of the purchase price for which it had contracted.

■ Since, as we hold, December delivery was of the essence, notice of shipping instructions *on or before December 17* was not merely a "duty" of the appellant—as it concedes: it was a condition precedent to the performance which might be required of the appellee. The nonoccurrence of that condition entitled the appellee to rescind or to treat its contractual obligations as discharged. Corbin on Contracts, §§ 640, 724 and 1252; Williston on Sales, §§ 452, 457; Restatement, Contracts, § 262; National Com-

modity Corp. v. American Fruit Growers, 6 Terry 169, 45 Del. 169, 70 A.2d 28; Alpena Portland Cement Co. v. Backus, 8 Cir., 156 F. 944; Jungmann & Co. v. Atterbury Bros., Inc., 249 N.Y. 119, 163 N.E. 123; Arnolt Corp. v. Stansen Corp., 7 Cir., 189 F.2d 5. On December 18th the appellant unequivocally exercised its right to rescind. Having done so, its obligations as to the Houston deliveries under the contract were at an end. And of course its obligations would not revive thereafter when the appellant finally succeeded in obtaining an export permit, a ship and a dock and then gave shipping instructions; when it expressed willingness to accept deliveries in January; or when it accomplished a "liberalization" of the outstanding letter of credit whereby payments might be made against simple forwarder's receipts instead of dock receipts.[1]

The appellant urges that by reason of substantial part performance on its part prior to December 17th, it may not be held to have been in default for its failure sooner to give shipping instructions. The contention has no basis on the facts. As to the Houston shipments the appellant's activities prior to December 17th were not in performance of its contract: they were merely preparatory to its expectation to perform at a later time. The mere establishment of the letter of credit was not an act of performance: it was merely an arrangement made by the appellant for future performance which as to the Houston deliveries because of appellant's failure to give shipping instructions were never made. From these preparatory activities the appellee had no benefit whatever.

The appellant also maintains that the contract was single and "indivisible"

and that consequently appellee's continuing shipments to Lake Charles after December 17 constituted an election to reaffirm its total obligation under the contract. This position also, we hold untenable. Under the contract, the appellee concededly had an option to split the deliveries betwixt Lake Charles and Houston. The price had been fixed on a per pocket basis, and payment, under the letter of credit, was to be made upon the presentation of dock receipts which normally would be issued both at Lake Charles or Houston at different times. The fact that there was a world market for rice and that in December the market price substantially exceeded the contract price suggests that it would be more to the appellant's advantage to obtain the Lake Charles delivery than to obtain no delivery at all. The same considerations suggest that by continuing with the Lake Charles delivery the appellee did not deliberately intend to waive its right to cancel the Houston deliveries. Conclusions to the contrary would be so greatly against self-interest as to be completely unrealistic. The only reasonable inference from the totality of the facts is that the duties of the parties as to the Lake Charles shipment were not at all dependent on the Houston shipments. We conclude their duties as to shipments at each port were paired and reciprocal and that performance by the parties as to Lake Charles did not preclude the appellee's right of cancellation as to Houston. Cf. Corbin on Contracts §§ 688, 695; Simms-Wylie Co. v. City of Ranger, Tex.Civ.App., 224 S.W.2d 265.

Finally, we hold that the appellant's claims of estoppel and waiver have no basis in fact or in law.

Affirmed.

---

[1]. The appellee was not informed that the letter of credit had "liberalized" until after it had rescinded. Moreover, even the liberalized letter did not call for payment of deliveries not made until January.