Samuel H. Hoestadter, J.
This case, involving a claim for the loss or destruction of personal property, perhaps illustrates how wide a gap can at times be found between precept and practice.
The plaintiff, Dr. Murray Banks, is a consulting psychologist; he is a professor of psychology and lectures extensively on psychology and mental hygiene. He holds the degree of doctor in education and has taught general psychology and psychology of personality at various institutions of learning. Besides his writings, two of his lectures have been recorded on long-playing records and among- his published books are ‘ ‘ How to Live with Yourself”, “How to Overcome an Inferiority Complex” and “What to do until the Psychiatrist Comes”. This detailed recital of Dr. Banks’ activities is prompted by the circumstance that all but a trivial part of his claim in the present action stems from them. Except for two comparatively insignificant *779 items the articles for whose loss recovery is here sought have to do entirely with his professional pursuits. In essence he asks redress for the loss of 12,000 copies of a brochure featuring his talents as a lecturer and of notes and manuscripts of material which serves as the basis of his lectures.
Dr. Banks sues the landlord of an apartment in 40 Park Avenue, Manhattan, in the City of New York, occupied by him as a home, the managing agent of the building and its superintendent for $9,085 as damages for the loss of items of his personal property which disappeared under circumstances to be stated. The occupancy was under a lease made on May 4, 1950 for a term commencing on August 1, 1950 and ending on September 30,1955. During the Summer of 1954 Dr. Banks entered into a contract for the purchase of a five-story penthouse building at 8 East 63rd Street, title to which was taken in October, 1954 by a corporation of which he is the president and of which he and members of his family are the sole stockholders. Beginning with November 8, 1954, on which date his furniture was taken by van from the 40 Park Avenue apartment to his new home at 8 East 63rd Street, Dr. Banks, with the assistance of his father, moved his possessions to the new address and after November 8, 1954 he no longer lived at 40 Park Avenue. The things not moved by van were transported by automobile.
On November 9, 1954 the plaintiff had secured one Belkin to take over his apartment at 40 Park Avenue; though at first a sublease was contemplated, the final arrangement was for a new lease to Belkin consummated by the execution on November 19, 1954 of the new lease between the landlord and Belkin for a term commencing on December 1, 1954. On the same day, November 19, 1954, the plaintiff signed at the landlord’s office the “ Termination of Lease ” agreement for the termination of his tenancy as of November 30, 1954 and the return to him by the landlord of $300 — part of his advance rent payment. The typewritten portion of this termination agreement recited that the tenant had “ quit and surrendered possession of the premises to the Owner ” and had paid all rent to November 30, 1954. Dr. Banks in his own handwriting added that he signed “ on condition ’ ’ that he was ‘ ‘ not liable for any painting, repair, or replacement of any type ’ ’ and that the owner accepted the apartment “as is at time of signing.” This agreement was signed by the owner and sent to the plaintiff, who received it a few days later; the $300 check followed a day or two after that.
It is undisputed that on November 19, 1954, immediately after the plaintiff had signed the termination agreement and *780 Belkin had signed the new'lease, the landlord gave orders to the painter, an independent contractor, to start the redecoration of the apartment and that the painters went into the apartment on that day. This was done with the knowledge and consent of Dr. Banks; indeed, he testified that he saw the painters in the apartment and had been told by them that the things not yet removed by him which he had left in a closet would not interfere with them, since they would not reach that part of the apartment for several days. The disappearance of these articles has given rise to this lawsuit.
This, then, was the situation for the period from November 19, 1954 on, during which the plaintiff’s property disappeared: Dr. Banks, whatever his strict legal status, was no longer living in the apartment. The painters, with his permission, were at work there preparing the apartment for Belkin’s occupancy; the landlord also was cleaning up the apartment and getting it ready for Belkin. Belkin himself had also been given access to the apartment by the plaintiff. The apartment was in the state of disorder usual to dismantling by its former tenant and its being made ready for its new occupant.
Yet, in the face of all this, Dr. Banks left the articles on which he now sets a value of $9,085 in an unlocked closet. He makes no claim that he even told any of the defendants that he was doing so, much less that he revealed their value. Besides the brochures and manuscripts already mentioned, he left a microphone, slip covers for a couch, and a few other items subsequently found and returned to him. On the evening of November 23, 1954 his father who had gone to the apartment to move these remaining articles found the closet empty and so reported to the plaintiff by telephone.
In his amended complaint the plaintiff charges that the defendants illegally entered his apartment and wrongfully and willfully removed and destroyed his property. It is clear that in the circumstances then existing, there was no unlawful entry, for the plaintiff had voluntarily given the defendants access to the apartment. Nor was there a bailment for there is not a shred of evidence of delivery of the property into the hands of any of the defendants for safekeeping.
Dr. Banks insists that the termination of lease agreement did not reach him until November 27, 1954 and did not take effect until that date. It is unnecessary to determine the validity of this contention, for liability cannot rest solely on the strict landlord and tenant relation, independently of the actual, physical situation with which the plaintiff was entirely familiar. Whether *781 the termination agreement had been concluded or not, there is no escape from the fact that Dr. Banks had already ceased to occupy the apartment and that painters were then working there with his permission. He knew, too, that the landlord was cleaning the apartment for Belkin. Bubbish was strewn about the floors and the apartment bore every evidence that Dr. Banks had vacated it and abandoned everything in it. He had conditioned his signing of the termination agreement on acceptance by the owner of the apartment “ as is at time of signing.” Both his act of leaving his property in an unlocked closet without even telling the defendants he had done so and any duty of the defendants to protect it must be judged against this background.
There is no direct proof as to when or how the property disappeared. The nearest approach to an explanation of what occurred is the statement of the individual defendant, the superintendent, based not on personal knowledge but on assumption, that “ these stupid porters destroyed it.” The plaintiff relies heavily on this proof as establishing that the employees of the defendants took the property “ in the course of their duties in cleaning the apartment.” I think not. The statement is that they destroyed it, not that they took it. That they did not take it is borne out by the fact that some of the articles were found later and returned to the plaintiff. A more natural view is that the porters in cleaning up put aside what they thought might possibly have been overlooked by Dr. Banks and threw out everything else as cast-off rubbish.
In passing on the reasonableness of their choice we may not forget that they were porters, not students. The brochure referred to has a picture of Dr. Banks standing before a microphone. On the outside cover it describes him, as “ The most Dynamic Convention Speaker in America on the most Fascinating Subject in the World ” and as “ A Psychologist With a Sense of Humor.” The succeeding pages quote many effusive tributes to his effectiveness as a lecturer from organizations before which he has appeared; these are called “ ‘ Oscars ’ for Dr. Murray Banks.” The porters were not on notice that these brochures were any longer of use or value. Finding them as they did in an unlocked closet of a vacant apartment, they might reasonably assume that Dr. Banks was discarding them, possibly for a revised edition. As for the manuscripts, there is no proof that they were packed or marked in any way to indicate that they were intended to be preserved. As the trier of the facts, I find that the porters, in throwing out this material and the other articles for which recovery is demanded acted with all *782 the diligence called for by the circumstances in the justifiable belief that the property had been abandoned by the plaintiff and were not guilty of negligence.
There is no evidence whatever that any of the defendants misappropriated or exercised hostile dominion over the property; hence they incurred no liability for its conversion (Gross v. Toder, 255 App. Div. 964 and cases cited). Since they were not negligent, the plaintiff has established no basis on which they may be cast in liability.
In any case, the- plaintiff’s contributory negligence bars a recovery. This would be true even in the case of a bailment (Osborn v. Cline, 263 N. Y. 434, 438; Wamser v. Browning, King & Co., 187 N. Y. 87). The record is not wholly clear whether the special lock which Dr. Banks installed in the early days of his tenancy, after a burglary, controlled a closet or the bedroom. If it was not feasible for him to use this lock, then due diligence certainly demanded that he inform the defendants that the items left in the unguarded closet were of value to him and were not to be disturbed. In all reason, he should have anticipated that the porters unless forewarned would probably throw out or destroy anything left behind, especially printed or typewritten material. A little applied psychology might well have suggested to him that the porters would not be endowed with the training, judgment and discrimination necessary to recognize the worth to him of the brochures and manuscripts. Judgment must be directed for the defendants on the plaintiff’s cause of action.
The defendant landlord has not sustained its counterclaim for the refunded advance rent and the same is dismissed. The motions of the defendants to strike out evidence and exhibits are severally denied, with exception in each instance to all the defendants. Let judgment be entered for the defendants accordingly.