BOSTON EDUCATIONAL RESEARCH COMPANY, INC., Plaintiff,

v.

AMERICAN MACHINE & FOUNDRY COMPANY, Defendant.

Civ. A. No. 71–2152.

United States District Court, D. Massachusetts.

March 15, 1973.

**1274**

Stephen A. Hopkins, Sherburne, Powers & Needham, Boston, Mass., for plaintiff.

George McLaughlin, Litner, McLaughlin, Skinner & Zonderman, Boston, Mass., for defendant.

## OPINION

TAURO, District Judge.

Plaintiff, a Massachusetts corporation, has brought this diversity action alleging that the defendant New Jersey corporation wrongfully disposed of goods belonging to the plaintiff. The case having been tried without a jury, the court makes the following findings of fact.

On March 1, 1970, Future Foods and Film Corporation (FFF) leased from defendant certain factory premises at 648 Steamboat Road, Greenwich, Con-

necticut. Between March 1 and December 31, 1970, FFF sublet portions of these premises to four companies, one of which was Sales Communications System, Inc., (SCS) a wholly owned subsidiary of the plaintiff.

The two-year sublease between FFF and SCS, dated March 30, 1970, provided for a monthly rental of $1,125, which was paid up to October 1, 1970, when SCS ceased operations and vacated the premises. Terms of the sublease gave FFF a lien on the personal property of SCS to secure payment of rent and the performance of other covenants. Paragraph 29 of the lease states that "Landlord will provide storage space in the amount and convenient as can be mutually agreed upon by tenant and Landlord and the use of hoist." [sic]

On or about June 10, 1970, plaintiff shipped certain cartons of material, weighing a total of 17,930 pounds, to SCS at Steamboat Road for purposes of storage. Employees of SCS receipted for the delivery and placed the cartons on the mezzanine of the premises.

The cartons, numbering between 100 and 150, were of various sizes, and ultimately occupied an area on the mezzanine of approximately 20 feet by 10 feet by 6 feet. At least some of the cartons were labelled or stenciled with the name of plaintiff. Although some of the cartons contained advertising material of the plaintiff, the majority held items called "Dial-a-Words." These learning devices consisted of a series of concentric plastic discs fastened together in such a way as to make possible the formation of words from prefixes, suffixes, and roots. Some of the "Dial-a-Words" were affixed to teaching booklets.

Harry Hooper, the principal officer of FFF, had several conversations with Tibor de Cholnoky, president of SCS and a director of plaintiff, requesting the removal of the cartons from the mezzanine, and pointing out the possibility of damage to the floor due to the weight of the load. After SCS ceased operations

on October 1, 1970, Cholnoky told Hooper that he (Cholnoky) would attempt to sell the Dial-a-Words in order to raise money to pay rent owed FFF. Cholnoky also suggested to Hooper that he try to sell the materials and then apply the proceeds to the rent debt. Efforts at sale were unsuccessful, and the cartons remained on the mezzanine.

During the next several months, some of the cartons had somehow become broken and their contents lay on the floor. Neither Cholnoky nor anyone else made any attempt to restore the contents or repair the damaged boxes.

When SCS ceased operations at Steamboat Road, it left behind not only these materials on the mezzanine, but also certain equipment on the third floor, consisting of tape recorders, electric motors and a sound proof room.

On January 30, 1971, Hooper wrote a letter to Robert Desmond, president of plaintiff, at his office in Boston. (Plaintiff's Exhibit 3). The letter referred to plaintiff's "occupied space," and described it as the "residue left when your subsidiary Sales Communications ceased operations here on October 1, 1970." The letter requested "a token charge for storage for the period October 1, 1970 through January 31, 1971." The letter continued:

> Incidentally, we still have almost a truck load of trash left by your people to dispose of—for which you are responsible.

> Please be advised that should we not receive payment of this amount by February 12, 1971, along with advice about your plans for your material, we will dispose of it all in the quickest possible fashion.

Desmond responded with a letter dated February 17, 1971 (Plaintiff's Exhibit 4), assuring Hooper that plaintiff had "plans" for the materials, and requesting that Hooper "continue this cooperation for another thirty days at which time our plans call for the removing of these materials and paying your storage charges."

No effort was made by plaintiff to remove the materials or pay the storage charge. Between February and July of 1971, Desmond made two unsuccessful attempts to communicate with Hooper by telephone. Sometime in July, Desmond sent Joseph Mandel to the Steamboat Road premises to determine what had happened to the goods. After Mandel's return to Boston, Desmond communicated with defendant's main office.

Prior to May, 1971, defendant had entered into an agreement with Alan Berni, Corp., providing that defendant was to convey the premises at Steamboat Road to Berni on June 2, 1971, and was to deliver the premises broom-clean and free of all tenants.

At or about this time, defendant had eviction notices served on FFF and its remaining subtenants. No notice was served on the departed SCS. FFF and its remaining subtenants vacated the premises by May 30, 1971, taking all their property with them.

In the latter part of May, at the direction of John Walsh, assistant manager of defendant's corporate real estate department, the boxes on the mezzanine were disposed of. Walsh's decision was made after he had determined the materials were of no value, and after consultation with defendant's attorney. Walsh had personally examined the contents of only three or four of the boxes. The other remaining property of SCS, located on the third floor, was determined to be of value and is being stored by defendant at another facility.

### Conclusions of Law

The parties are in agreement that the substantive law of Connecticut, locus of the alleged tort, controls this action.

Plaintiff asserts three theories of recovery for destruction of its property: 1) the defendant was negligent because it violated Title 50, § 50–2, Conn.Gen. Stat. (1969 Supp.); 2) the defendant was negligent because it breached the common law duty to treat plaintiff's property as a reasonable person would

under the circumstances; 3) the defendant converted plaintiff's property. The plaintiff's theories will be discussed seriatim.

I) Title 50, § 50–2, Conn.Gen.Stat. (1969 Supp.) provides:

> All goods not perishable, left with any person or upon any public wharf or highway, and all goods, other than personal baggage of passengers, which are left at any railroad station or in any railroad car or carriage, and whose owner is unknown or neglects to take them away for six months from the time when they are left, shall be advertised one month in a newspaper published in the county where such goods are left. If the owner thereof does not take them away within such month, they may be sold and the proceeds disposed of in the manner provided in section 50–1.

■ While under Connecticut law, a person who violates a statute enacted for the protection of the public is guilty of negligence as a matter of law, Buravski v. DiMeola, 141 Conn. 726, 109 A.2d 867 (1954), this principle is inapposite in the instant case.

■ First, it is unclear whether this statute was designed to protect an owner of real estate burdened with unwanted goods of some unknown person, or the owner of the goods themselves.[1]

■ Second, the obvious intent of this section is to provide notice to an owner of goods so that he may have an opportunity to recover them before they are destroyed or otherwise disposed of. The statute calls for *constructive* notice, advertisement for one month in a newspaper. But plaintiff had far better notice that its goods were in jeopardy. Plaintiff's president received *actual* notice that the goods in question were being held. The notice was clear and unequivocal that the goods would be disposed of if they were not removed within a specified period. (see Plaintiff's Exhibit 3). Plaintiff's reaction to this notice was a letter (Plaintiff's Exhibit 4), which was mailed five days after the period of limitation set in the notice, and by its terms acknowledged that its goods were subject to removal and that a storage charge was due.

■ The fact that the notice came from defendant's sublessee (FFF), and not defendant itself, is of no significance. What is significant is that the plaintiff had actual notice its goods were in jeopardy and for approximately five months had the opportunity to remove them, or to make other arrangements, before they were destroyed. It is difficult to imagine how plaintiff would have benefited had defendant complied with the statute and advertised its intentions for one month in a Greenwich newspaper. Assuming the defendant should have followed the statutory mandate and that plaintiff was a beneficiary of its provisions, such failure under the facts and circumstances of this case is at most a condition and not the cause of any damage suffered by plaintiff.

■ II) Plaintiff's negligence theory fails because of its own lack of due care under the circumstances involved. Plaintiff's property was destroyed because the plaintiff sat by idly for 5 months after receiving actual notice that its property would be disposed of unless removed. Such indifference warrants the conclusion that plaintiff had lost interest in this stack of cartons. Such inaction is certainly inconsistent with plaintiff's claim that these cartons had the value of $100,000, a significant sum to any company let alone one undergoing financial difficulties as outlined by its president's testimony.

Vissenberg v. Bresnahen, 65 Wyo. 367, 202 P.2d 663 (1949), rehearing denied 203 P.2d 966, involved an analogous situation. There, plaintiff's tenancy was terminated and he vacated, leaving a stock of merchandise. The defendant landlord, after several requests to the tenant to remove the goods, caused them to be moved to a warehouse. The tenant

---

1. No legislative history has been brought to our attention.

knew of this but took no action. Subsequently, creditors of the tenant attached the property in the warehouse and sold it to satisfy their claims. The court rejected plaintiff-tenant's claim for damages, stating:

> Generally speaking, the standard of responsibility of the landlord in that connection is that of reasonableness of conduct under the particular circumstances confronting him and in the light of a like standard of responsibility on the part of the tenant. If a plaintiff in a particular action in that connection has failed to properly meet his own responsibilities and such failure is the proximate cause or one of the proximate causes of his loss, he cannot of course prevail. 202 P.2d, at 668.

III) Plaintiff's final contention, that defendant is liable for conversion, is similarly without merit. Under Connecticut law, conversion is defined as an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the latter. Gilbert v. Walker, 64 Conn. 390, 394, 30 A. 132 (1894).

Not every disposition of another's property, however, involves liability for conversion. There is no conversion when a plaintiff has abandoned, or apparently abandoned, his property before a defendant takes possession of it. 18 Am.Jur.2d Conversion §§ 71, 132. Further, the lack of value of the property, or the apparent lack of value of the property, has been held to relieve a landlord from liability for conversion of a departed tenant's property. See Row v. Home Savings Bank, 306 Mass. 522, 525, 29 N.E.2d 552 (1940).

In the *Row* case, the defendant was a mortgagee of certain premises occupied by the Council for Campfire Girls of Greater Boston. The plaintiff rented a room from the Council. In June, 1932, plaintiff moved out, leaving two trunks and a suitcase in the building. These were filled with a variety of items, such as manuscripts, photographs, documents, films, antiques, clothing, books, and china.

In May, 1933, the Council informed plaintiff it was abandoning the building and that "everything was going out of the building"; the next month the Council moved out its belongings. Plaintiff returned to the premises in early July, 1933, but departed, leaving her property in the same condition in which it had been.

On July 13, 1933, defendant entered upon the premises, foreclosed its mortgage, and caused the "debris", including plaintiff's property, to be removed and thrown away.

In finding no error in the trial court's judgment for defendant on a declaration in conversion and negligence, the Supreme Judicial Court wrote:

> Here the plaintiff had no right to continue to keep her property in the building. The defendant entered under its paramount right to the possession of the mortgaged building and land, free from the plaintiff's property. Its duty as to that property did not extend beyond reasonable conduct. The building had been vacant a long time. The defendant did not know to whom the property belonged, and consequently could not deliver it to the plaintiff. Its apparent worthlessness excused the defendant from searching for the owner. Moving the property into the street would have made the defendant liable for a public nuisance. Finnigan v. Hadley, 286 Mass. 345, 347, 190 N.E. 528. Adjmi v. Ginter Restaurant Co., 291 Mass. 224, 226, 196 N.E. 842. No storage warehouse could be expected to receive worthless property, depending for payment upon a lien. The defendant could not be expected to contract for storage that probably would continue indefinitely. There was little for the defendant to do but that which it did. 306 Mass., at 526, 29 N.E.2d, at 554.

Very often, one entitled to take possession of a building does so only to find goods remaining which had appar-

ently been abandoned by a prior occupant. A possessor faced with this situation cannot act unreasonably with respect to such goods, but certainly he is not prohibited from acting at all to restore his property to its full use. He is entitled to act on appearances. He is not charged with awareness as to what may be the unique value of goods, but only such awareness as could be expected of any reasonable person finding himself in such a position. Row v. Home Savings Bank, 306 Mass. 522, 29 N.E.2d 552 (1940). See also 131 A.L.R. 165; 18 Am.Jur.2d Conversion § 132; Banks v. Pierpont Estates, Inc., 27 Misc.2d 778, 209 N.Y.S.2d 421 (Sup.Ct.1961).

Plaintiff's dealings with respect to the subject property were entirely inconsistent with its present claim as to damages. Plaintiff failed to act for five months after being notified that its goods were where they were not supposed to be and if not removed would be destroyed. In a practical as well as legal sense, the cause of the goods destruction was plaintiff's unreasonable failure to take some action when notified and given the opportunity to do so.

Judgment for the defendant.