In the Matter of BORNE CHEMICAL COMPANY, INC. a corporation of the State of New Jersey, Debtor-in-Possession.

John W. BITNER, Isa R. Coble, William T. Galey, Walter B. Levering, Jr., Walter F. Martin, Andrew T. Rolfe, Robert H. Smellie, Jr., Mary G. Wilson and C. Merritt Winsby, and the class of all persons who were stockholders of The Rolfite Company on November 30, 1979, Plaintiffs,

v.

BORNE CHEMICAL COMPANY, INC., Debtor-in-Possession, Defendant.

Bankruptcy No. 80–0468.

United States Bankruptcy Court, D. New Jersey.

Nov. 10, 1980.

Crummy, Del Deo, Dolan & Purcell by Frank J. Vecchione, Newark, N. J., for debtor-in-possession.

Pitney, Hardin & Kipp by Timothy Greiner, Morristown, N. J., for present and prospective class members.

Henry J. Wilewski, Jersey City, N. J., for Wayne Bowers.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

This matter comes on upon complaint of John W. Bitner, et al., stockholders of The Rolfite Company, against the debtor Borne Chemical Company, Inc. seeking judgment vacating the automatic stay, so as to permit plaintiffs, individually and as a class, to proceed with the motion to intervene and to certify class and thereafter to prosecute any and all claims, including class action claims which plaintiffs may have against the debtor and other claimants in a certain state court litigation commenced by the debtor and certain individuals against Rolfite, et al., in the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C–5071–78. Related to the above adversary proceeding is the motion to extend time within which prospective class members may file claims and debtor's motion to disallow claims from Rolfite-related litigation.

## STATEMENT OF FACTS

1. On or about August 21, 1979 the above debtor, Borne Chemical Company, Inc., et al., commenced an action against Rolfite Company, et al., in the Superior Court of New Jersey, Chancery Division, Union County.

2. Rolfite and the individual defendants Gilbert, Alexandre and Schenck, principal officers and directors of Rolfite, counterclaimed against Borne et al., alleging, *inter alia*, that they, as stockholders of Rolfite, were damaged by Borne Chemical's tortious interference with the prospective merger of Rolfite into a subsidiary of Quaker Chemical Corporation. Counterclaimants asserted

that damages could be calibrated as of November 30, 1979 (the last day the merger could be effected), on the basis of the anticipated exchange of Rolfite and Quaker shares of stock; and since, at that time, the Quaker stock was represented to have had a much greater value than the Rolfite stock, Rolfite shareholders were tortiously deprived of their right to Quaker stock, which deprivation is calculable in terms of total dollar damages.

3. Messrs. Gilbert, Alexandre and Schenck, by appropriate motion filed in the above noted state court action, also sought to represent the class of all shareholders of Rolfite, asserting on behalf of said class essentially the same claims which they asserted against Borne in both the state court action and in the Chapter 11 proceedings.

4. Judge Edward McGrath of the Superior Court of New Jersey, Chancery Division, Union County, ruled against the individual defendants Gilbert, Alexandre and Schenck on their motion for class action certification pursuant to N.J.Civ.Prac.R. 4:32–1 *et seq.*, concluding that a potential conflict of interest could develop between the principals of Rolfite, Gilbert, Alexandre and Schenck, and other individual shareholders of Rolfite.

5. As a consequence of Judge McGrath's ruling, other alleged damaged Rolfite shareholders, Bitner, et al., represented by independent counsel, sought permission as creditors of Borne to intervene and to certify class in the pending state court action, *Borne Chemical Co. v. Rolfite Co.* With regard to the instant bankruptcy proceeding, Bitner, et al., are represented by Pitney, Hardin & Kipp, which firm also represents Rolfite and its principals, Gilbert, Alexandre and Schenck.

6. The aforesaid motion to intervene, etc., filed by Bitner, et al., was successfully opposed by the debtor Borne Chemical Company because of movants' failure to obtain relief from the automatic stay imposed by 11 U.S.C. § 362. As a consequence, the individual plaintiffs to the instant adversary proceeding, Bitner et al., filed a complaint in this Court to vacate the stay to

enable them to intervene in the state court action.

7. In the brief filed with this Court by Pitney, Hardin & Kipp, counsel for present Rolfite-related claimants and prospective Rolfite-related class members, counsel represents that twenty Rolfite-related claimants have already filed individual claims. Based upon their aggregate holdings of 181,095 shares of Rolfite stock, these twenty individuals claim damages in the total dollar amount of $1,442,091. Rolfite-related claims alone exceed the accounts payable of Borne Chemical.

8. Counsel for the present and prospective Rolfite-related claimants filed a motion on behalf of Bitner, et al., seeking an extension of time for the proposed intervenors, Bitner, et al., to file claims in these proceedings. Said motion, purportedly filed to protect the rights of the same prospective class members to file claims in the event the state court should grant the motion for class certification, appears to have been prompted by claimants' apprehension that the Disclosure Statement would be approved before a class is certified by the state court.[1]

9. On September 11, 1980 this Court ruled on the adequacy of the information furnished by the debtor Borne Chemical Company in its Disclosure Statement; *In re Borne Chemical Co.*, No. 80–00495 (D.N.J. 1980). In approving the adequacy of the information contained in the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, the Court directed the debtor to furnish a supplemental evaluation of its assets and liabilities to reflect present values. It appears that this Court's direction has not been complied with.

10. Neither the complaint to vacate the stay nor the motion to extend time for filing was briefed by the parties. The complaint and the motion are clearly ancillary to the key motion filed by the debtor "to temporarily disallow claims from Rolfite-related litigation."

## CONCLUSIONS OF LAW

It is undisputed that the "claims" referenced by the instant motion of the debtor to temporarily disallow claims from Rolfite-related litigation, are contingent and unliquidated. They relate to present and prospective "claims", as that term is defined in 11 U.S.C. § 101[4][A],[2] which at the time of the filing of the Chapter 11 petition were in the process of being litigated. All state court proceedings have been stayed by reason of the automatic stay imposed by 11 U.S.C. § 362[a][1].

It is plain that under the former Act allowance of a contingent claim was not mandatory. The proviso at the end of Bankruptcy Act, § 57(d), 11 U.S.C. § 93(d), provides:

> *Provided, however,* That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act.

The proviso to § 57(d) thus stands in sharp contrast to 11 U.S.C. § 502[c], which states:

> There shall be estimated for purpose of allowance under this section any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case.

 As noted in Collier, "the content of the proviso to Section 57d has been elimina-

---

1. Interim Bankruptcy Rule 3001[b][3] provides: "A proof of claim may be filed at any time prior to the approval of the disclosure statement unless a different time is fixed by the court on notice as provided in Rule 2002."

2. 11 U.S.C. § 101[4][A] defines "claim" as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

ted from impact on allowability of claims under the 1978 legislation. Under that new statute, contingent or unmatured claims are to be liquidated by the bankruptcy court 'in order to afford the debtor complete bankruptcy relief; these claims are generally not provable under present law' " [i.e., the former Act]. 3 Collier on Bankruptcy § 502.02, at 502–22 (15th ed. 1980) (quoting H.R.Rep.No. 595, 95th Cong., 1st Sess. 352, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 6308). Where liquidation would unduly delay the closing of a case, a contingent or unliquidated claim must be estimated by the Court for purpose of allowance. *See* Collier, *supra*, § 502.03, at 502–65. Thus, unlike the provisions of § 57(d) of the former Act, § 502[c] "requires that all claims against the debtor be converted into dollar amounts." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 354, *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 6310.

At the September 16, 1980 hearing on the instant matter, this Court voiced concern as to the very serious impact Rolfite-related claims might have upon the orderly administration of the Chapter 11 proceedings. Counsel for Rolfite, acknowledging that possibility, noted that twenty Rolfite-related claimants, holders of 181,095 shares of Rolfite stock, have already filed individual claims totaling $1,442,091. All told, as of November 30, 1979, the number of Rolfite shareholders totaled 187, holding in the aggregate 434,550 shares of Rolfite stock. Thus, it is mathematically plausible that total Rolfite-related claims will exceed $3.3 million in dollar amount, a potentially damaging if not fatal consequence to confirmation of the plan of arrangement. Certainly, the inclusion of such claims would impact upon the status of the non-Rolfite creditors.

As alleged in the affidavit of Stuart K. Patrick, president and chief operating officer of Borne Chemical Company, Inc., Borne has, since the filing of its Chapter 11 petition in February, 1980, liquidated its packaging division located in Glendale, New York, in recent years a persistent financial drain on its corporate resources, and concentrated its efforts on making viable its petroleum blending and processing division

in Elizabeth, New Jersey. The result, according to Mr. Patrick, is that Borne's operation is now showing a profit and that such improvement is expected to continue. These optimistic representations notwithstanding, it nevertheless remains true that the aim of the debtor is to keep the business afloat pending confirmation.

This Court has carefully considered the method proposed by counsel for Rolfite-related claimants, both present and prospective, for estimating the claims in question. The suggested formula is overly simplistic. It calls for taking the difference in value between Rolfite stock and Quaker Chemical stock as of November 30, 1979, the last date at which the projected merger could have been effected, and multiplying the differential by the number of shares held by each claimant on that date. The underlying rationale of the proposed formula is that, since the merger agreement between Rolfite and Quaker provided, as partial consideration, for the distribution of Quaker stock to Rolfite stockholders, the latter stood to gain economically from the contemplated merger. Counsel attributes the loss of the prospective economic gain to the Rolfite stockholders to the failure of the proposed merger which, he alleges, resulted from the state court action initiated by Borne against Rolfite.

Consideration of counsel's argument suggests a plethora of difficulties, unanswered by the Rolfite proposed formula. The Court is asked to estimate the asserted claims based upon an alleged market value differential between the value of the stock of the respective entities. It is relevant to note, as stated by counsel for Rolfite-related claimants, that while Quaker Chemical stock is traded over-the-counter, Rolfite stock is not traded and "apparently has no readily available market." In effect, the Court is called upon to make an evaluation pursuant to a formula, notwithstanding the absence of an essential premise. In such circumstances, evaluation is infeasible.

Interim Bankruptcy Rule 3001[b][4], adopted by this Court, tracks Rule 301[b] and provides:

A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of such claim.

Upon filing of a claim or interest pursuant to 11 U.S.C. § 501[a], the claim or interest is deemed "allowed, unless a party in interest .... objects," under 11 U.S.C. § 502[a]. Accord, Rule 306[b], which provides that a properly filed claim is deemed allowed unless objection is made by a "party in interest." Clearly, the debtor-in-possession, Borne Chemical Company, is a "party in interest" within the contemplation of § 502[a]. 11 U.S.C. § 1109[b] states that the term "party in interest" includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." *See also* Collier, *supra*, § 502.01 at 502–12 to –13.

■ As indicated above, twenty Rolfite shareholders have filed individual claims pursuant to § 501. According to Rule 301[b] and section 502[a], said Rolfite claimants must be deemed to have made a prima facie case as regards both the validity and amount of the alleged claims. As stated in Collier, *supra*, § 502.02, at 502–23, ".... the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim." The burden is on the debtor to overcome this prima facie effect, notwithstanding that the burden of ultimate persuasion remains at all times on the claimants to prove the validity of their claims by a preponderance of the evidence. *In re Palm Investments of Pinellas County, Inc.*, 2 B.R. 646, 649 (Bkrtcy.M.D.Fla.1980); *In re Dutch Inn of Orlando, Ltd.*, 2 B.R. 268, 271–72 (Bkrtcy.M.D.Fla.1980); *In re Indus. Car Mfg. Co.*, 1 B.R. 339, 345 (Bkrtcy. E.D.Pa.1979); *In re Georg Jensen, Inc.*, 1 B.R. 239, 244 (Bkrtcy.S.D.N.Y.1979). *See also* Collier, *supra*, § 502.01, at 502–18 to –19.

■ Examination of the allegations found in the supporting affidavit of Stuart K. Patrick reveals serious questions as to the merits of the counterclaim in the state court action, which leads this Court to conclude that the debtor has sustained his burden of overcoming the prima facie effect given the claims. The determination of the allowability of the Rolfite-related claims is preeminently the function of this Court; 11 U.S.C. § 502[b], *see* Collier, *supra*, § 502.02, at 502–24. However, having determined that the threshold burden of proving the validity of the alleged claims has not been met, we do not reach the issue of allowability. Accordingly, the Rolfite claimants must establish the validity of their claims in the state court action. Pending such state court determination, it is the opinion of this Court that, if it were required to do so, it could attach little or no value to the claims.

Accordingly, the Court has determined that it will grant the motion to temporarily disallow claims from Rolfite-related litigation. This decision is buttressed by powerful equitable considerations. To allow the hotly disputed claims, both present and prospective, herein referenced, would be for all practical purposes to doom Borne's rehabilitation efforts, now nearing their final stages, defeating the very purpose of reorganization, namely,

> to maximize the welfare of the debtor, its creditors, and the general public by sustaining or strengthening the debtor's going-concern value. If the reorganization fails, the debtor, its employees, its creditors and the public lose the margin by which the debtor's going-concern value exceeds its liquidation value. Therefore, when reorganization is appropriate, everyone has a stake in the survival of the business.

Hughes, *"Wavering Between the Profit and the Loss": Operating a Business During Reorganization Under Chapter 11 of the New Bankruptcy Code*, 54 Am.Bankr.L.J. 45, 69 (1980).

Counsel for Rolfite has expressed concern that under the "sweeping discharge provisions" of 11 U.S.C. § 1141, such debts alleged by Rolfite-related claimants as are ultimately adjudicated to be valid and enforceable will be discharged in bankruptcy

as the result of confirmation of a plan long before resolution of the issues raised in the pending state court litigation. Such fears are misplaced. Pursuant to 11 U.S.C. § 1141[d][1], the Court can expressly condition discharge of the debtor following confirmation of a plan, on the final adjudication of the issues raised in the pending state court litigation, such that Borne will be held liable for the total amount of Rolfite-related claims in the event said claims are ultimately upheld in state court.

> [1141(d)] contains the discharge for a reorganized debtor. Paragraph (1) specifies that the confirmation of a plan discharges the debtor from any debt that arose before the date of the order for relief *unless the plan or the order confirming the plan provides otherwise.* [Emphasis added.]

H.R.Rep.No. 595, 95th Cong., 1st Sess. 418, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5787, 6374.

> *[E]xcept as provided in the plan of reorganization and in the order approving the plan of reorganization,* pursuant to section 1141[d], the confirmation of the plan discharges the debtor from any debt that arose prior to the date of confirmation (including administrative claims). . . . [Emphasis added.]

5 Collier, *supra,* § 1141.01, at 1141–9.

It is thus apparent that the Court can and will, pursuant to § 1141[d], protect such Rolfite-related claims ultimately adjudged successful in the pending state court action by requiring, in effect, a waiver of discharge from Borne with respect to the Rolfite-related claims.

The motion made by Rolfite-related claimants, ancillary to that of the debtor to temporarily disallow claims, can now be readily disposed of. The motion to extend the time in which to file claims by prospective Rolfite-related claimants is herewith mooted with respect to voting on the plan. However, to protect the rights of said claimants in the event they are successful in the state court action, the motion is granted for the purpose of allowing them to file proofs of claim. Our decision in this regard

accommodates the requirements of 11 U.S.C. § 1111[a]. *See,* e.g., Bisbee, *Business Reorganization Practice Under the Bankruptcy Reform Act of 1978,* 28 Emory L.J. 709, 739 (1980).

The debtor advancing no objection to the relief sought in the above captioned complaint, the requested relief is granted.

*Pari passu* with the preceding, the claim of Wayne E. Bowers is also temporarily disallowed during the instant reorganization and rehabilitation proceeding.

Submit an Order in accordance with the above.