In re CENTRAL RUBBER PRODUCTS, INC., Debtor.

CENTRAL RUBBER PRODUCTS, INC., Plaintiff,

v.

STAFFORD HIGGINS INDUSTRIES, INC., Defendant.

Bankruptcy No. 205–5–80–00063.
Adv. No. 205–5–82–0356.

United States Bankruptcy Court, D. Connecticut.

July 20, 1983.

Thomas L. Kanasky, Jr., Levin & Charmoy, Bridgeport, Conn., for debtor/plaintiff.

Robert A. Slavitt, Slavitt, Connery & Vardamis, Norwalk, Conn., for claimant/defendant.

## MEMORANDUM AND DECISION ON DEBTOR'S OBJECTION TO CLAIMS AND DEBTOR'S COUNTERCLAIM

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On January 31, 1980, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Thereafter, the defendant, Stafford Higgins Industries, Inc., filed the following claims against the estate:

1] Claim Number 3: "$1,500.00 rent payment plus $300.00 water and electric rent." This was designated as a priority claim.

2] Claim Number 4: $2,716.60 "Use and occupation of the premises with respect to goods under Sheriff's attachment and two large plastic foaming machines in the premises formerly leased. Sheriff's Bill of Costs." The priority of this claim was not stated.

3] Claim Number 34: $17,440.00 "Use and occupation of the premises with respect to goods under Sheriff's attachment and two large plastic foaming machines in the premises formerly leased." This was designated as a priority claim.

4] Claim Number 35: $4,140.60 "securing assets for the benefit of creditors." This was designated as a priority claim.

In the instant proceeding, the debtor objects to these claims and further asserts a counterclaim, alleging that property of the debtor was damaged and lost due to the claimant's negligence.

### II.

The background common to the objections and counterclaim may be stated briefly. One day prior to the filing of the petition, the debtor was lawfully evicted from the claimant's premises known as 25 Van Zant Street, Norwalk, Connecticut, where the debtor had been leasing 9,000 square feet on the building's first level. On the day of the eviction, the defendant moved the debtor's personal property, except for two large injection molding machines and several lesser objects, to the building's basement level. A sheriff, acting under the defendant's instructions, and workers, who were hired by the defendant, transferred the property.

The debtor then used the basement space as a warehouse. The debtor's president made approximately fifty trips to the basement storage to remove property for sale. In May of 1980, when the debtor had acquired space elsewhere, all remaining property was removed from the basement level.

The two large molding machines on the first level were not removed from the premises until September 1980, when the debtor sold the machines. The defendant had, however, in July of 1980, moved the molding machines from one area of the first level to another.

## OBJECTIONS TO CLAIMS

### A.

#### *Claim Number 3*

Claim Number 3, as filed, is in the total amount of $1,800.00 in consideration for rent ($1,500.00) and water and heat ($300.00). The only evidence, which arguably contradicts the claim, consisted of the testimony of the debtor's president, who at the outset of the trial, stated that he could not determine how the amounts or priorities of any of the claims were reached. Later, however, the debtor's president testified that the rent was $1,500.00 per month.

■ A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 301(b); *In re Borne Chemical Co., Inc.*, 16 B.R. 509 (Bkrtcy.D.N.J.1980); *In re Georg Jensen, Inc.*, 1 B.R. 239, 244 (Bkrtcy.S.D.N.Y.1979). Consequently, a debtor or trustee who objects to a proof of claim has the burden of going forward with evidence in rebuttal. *In re Avien, Inc.*, 390 F.Supp. 1335, 1342 (E.D.N.Y.1975). The ul-

timate burden of persuasion, however, is upon the creditor, *In re Georg Jensen, supra,* and in that regard, the creditor must prove his claim by a fair preponderance of the evidence. *Rasmussen v. Gresly*, 77 F.2d 252 (8th Cir.1935); *In re Palm Investments of Pinellas County, Inc.*, 2 B.R. 646, 649 (Bkrtcy.M.D.Fla.1980).

■ Here, the debtor has failed to rebut the *prima facie* validity of claim Number 3. Indeed, the little evidence that bears upon the claim supports it. Thus, Claim Number 3 must be allowed, but the defendant has conceded, and this court accepts, that claim Number 3, arising prepetition, should not be accorded priority status.

### B.

#### *Claim Number 4*

Claim number 4, as filed, is a hybrid claim for use and occupancy and costs incurred during the eviction process. The former element of the claim has been abandoned by the defendant,[1] (because it was duplicative of Claim Number 3),[2] leaving the priority claims in connection with the eviction.

The evidence adduced at trial demonstrated that the sheriff's fee was $216.60 and those who moved the debtor's property from the first level to the basement charged $800.00. The issue then is whether the total $1,016.60 should be allowed as a priority claim.

■ A claim of priority must ordinarily be based on a provision of the Bankruptcy Code. *See Guerin v. Weil, Gotshal & Mang-*

---

1. See defendant's Post-Trial Brief Findings Of Fact (Defendant's Brief), p. 16.

2. Defendant's letter to court dated May 17, 1983.

 Pursuant to the court's request made at the close of oral argument, the defendant submitted this letter to argue further, based on the evidence, how it arrived at its claims. In its own letter to the court, dated May 18, 1983, the debtor strenuously objected to the "entire contents" of the defendant's letter; but to the

extent that the defendant acknowledged that its claim was duplicative, the court must take notice, and the objection of the debtor is not understandable.

Other portions of the defendant's letter are merely accorded the weight of argument. Similarly, the debtor's letter contending that nothing in the defendant's letter was established at trial is viewed by the court as argument and not as fact.

*es,* 205 F.2d 302 (2d Cir.1953) (Act case [3] ). The defendant points to no specific section in the instant proceeding, but argues that $1,016.60 should be allowed as an "administrative expense or priority claim" because there was a benefit to the estate and the amount is "unsubstantial to all unsecured creditors." [4]

Regarding priorities and administrative expenses, the Bankruptcy Code provides in pertinent part:

507. Priorities

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title,

. . .

503. Allowance of administrative expenses.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered *after* the commencement of the case; . . . [emphasis added]

It is apparent that no statutory authority grants a priority to the prepetition claims such as those set forth by Claim Number 4. *See In re Hearth & Hinge, Inc.,* 28 B.R. 595, 10 B.C.D. 615 (Bkrtcy.S.D.Ohio 1983). Thus, under *Guerin v. Weil, Gotshal & Manges, supra,* the $1,016.60 claim is not entitled to priority status. *See also In re Meyer's, Inc.,* 15 B.R. 390, 8 B.C.D. 418 (Bkrtcy.S.D.Cal.1981); *In re Billelo,* 171 F.Supp. 69 (E.D.N.Y.1959); *In re Ford Home Furnishings Co.,* 272 F.Supp. 820 (D.D.C.1967).

Even assuming that this court has the equitable power to expand the list of priority claims sanctioned by the Code, *see generally, In re Supreme Plastics, Inc.,* 8 B.R. 730 (D.N.D.Ill.1980), I find no reason for its exercise here insofar as the primary reason that the defendant moved the property was to obtain possession of the premises. *Cf. In re Supreme Plastics, Inc., supra; In re Hearth & Hinge, Inc., supra.* I accordingly conclude that Claim No. 4 is not entitled to priority status, but it may be allowed as a general claim.

C.

*Claim Number 34*

Claim Number 34 is for the debtor's postpetition use and occupancy of the first and basement levels of 25 Van Zant Street. The debtor acknowledges that this is a priority claim, *see* 11 U.S.C. §§ 507 and 503, but disputes the amount.

As noted, the first level covered approximately 9,000 square feet. The two injection molding machines, which leaked oil and created an unpleasant odor, were 18 by 4.5 feet. At the time of the eviction, the machines, set perpendicular to each other, occupied a bay 50 feet across and protruded 25 feet from the walls in such a way as to prevent easy passage through the first level.

Although the molding machines each displaced only 81 square feet and occupied a bay of about 1,300 square feet, the defendant contends that its administrative claim should be based upon the entire 9,000 square feet originally leased. The defendant argues that because the machines were difficult to walk around and caused the premises to be "permeated with an unpleasant and distasteful aroma," [5] the space was effectively lost for rental purposes. In other words, the defendant does not argue that the debtor benefitted by the full 9,000 square feet but rather relies on its own detriment for the basis of its administrative claim.

---

3. "[T]he body of law that grew up interpreting [Act] § 64(a)(1) has value as precedent in interpreting 11 U.S.C. § 503(b)(1)(A)." *In re Peninsula Gunite, Inc.,* 24 B.R. 593, 10 B.C.D. 80 (Bkrtcy.App.R. 9th Cir.1982).

4. Defendant's Brief at p. 15.

5. Defendant's Brief, p. 13.

■ Where a landlord is precluded from utilizing space for a reason more compelling than an "unpleasant and distasteful aroma," namely, where the debtor still has the right to assume or reject the lease, the court must inquire into the value received by the estate. *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene S.A.,* 280 F.2d 119 (2d Cir.1960); *In re Rhymes,* 14 B.R. 807, 8 B.C.D. 636 (Bkrtcy. D.Conn.1981). As stated in 3 *Collier on Bankruptcy* ¶ 503.04 at 503–15 (15th ed. 1982):

> "[T]he court will scrutinize very carefully to what extent the trustee has made necessary use of the premises and will deny the landlord the full rental value where a small part of it was occupied by the trustee in preservation of the assets of the debtor."

Accordingly, I conclude that the defendant is only entitled to charge for the use and occupancy of 1,300 square feet on the first level.

There was conflicting testimony regarding the amount of space used by the debtor at the basement level. The debtor's president, who visited the space about 50 times, testified to an area of about 1,400 square feet and illustrated the area occupied on the basement level with a diagram of 25 Van Zant Street.

The defendant claims that the debtor occupied 5,000 square feet from February 1, 1980 to April 30, 1980 and 3,750 square feet during the month of May. Those figures were supported primarily by the testimony of Mr. Katz, who managed the building for the defendant.

The evidence on this portion of Claim Number 34, thus stands in balance and, therefore, the defendant has failed to prove its claim beyond the 1,400 square feet acknowledged by the debtor's president.

Having determined that the area used and occupied by the debtor was 1,300 square feet on the first level and 1,400 square feet on the basement level, I next assess the value of the space in both areas. The debtor claims that the space in both areas had a value of $2.00 per square foot while the defendant urges the court to adopt a $4.00 per square foot value. In that regard, the parties offered three expert witnesses.

Of the three, Mr. Buono, a real estate broker called by the defendant, presented the most persuasive testimony. He determined that the value of the first level was "three or four dollars a square foot." [6] His opinion was based on three transactions involving similar space which rented for approximately three dollars per square foot. [7]

The evidence indicates that the space was more desirable than the space used for comparison by Mr. Buono but fails to justify a $4.00 charge, especially in light of Mr. Buono's conclusion that it was worth three or four dollars. In fact, Mr. Buono's response to questions put to him by the defendant's counsel seem to accept the $3.00 figure. [8] Furthermore, although the debtor's expert witness was clearly less knowledgeable about the subject property than Mr. Buono, as revealed during cross examination, that portion of the debtor's expert's testimony, which indicated that the going rate for light industrial space was approximately $3.50 per square foot, suggests that the space should not be valued at $4.00.

Accordingly, based primarily on Mr. Buono's testimony, I find the value of the space used and occupied by the debtor on the first level was $3.25 per square foot. The basement level was essentially comparable to the first level for storage purposes and, therefore, I find that both areas should be valued at $3.25 per square foot.

All that remains in connection with Claim Number 34 is the mathematical computation.

FIRST LEVEL

1,300 sq. feet at $3.25 per sq. foot = $4,225 per annum
$4,225 divided by 12 = $352.08 per month
$352.08 x 8 (February through September) = $2,816.64

---

**6.** Transcript excerpt of hearing held on October 7, 1982, p. 6.

**7.** *Id.*

**8.** *See id.* at 10.

BASEMENT LEVEL

1,400 sq. feet at $3.25 per sq. foot = $4,550.00 per annum
$4,550 divided by 12 = $379.17 per month
$379.17 x 4 = (February through May) = $1,516.68

TOTAL USE AND OCCUPANCY CLAIM:

$2,816.64 + $1,516.68 = $4,333.32

### D.

### Claim Number 35

Claim Number 35, as filed, aspires to administrative priority and states that $4,140.60 is due in consideration for "securing assets for the benefit of creditors." No evidence in support of this claim was offered at trial and the claim was not addressed in the defendant's post-trial brief.

Unlike a general claim, "a claim of priority when alleged does not shift the burden of going forward to an objector thereto; the claimant must introduce proof sustaining his claim to priority." 3A *Collier on Bankruptcy* ¶ 64.701 at 2276 (14th ed. 1975). Here, the alleged priority is not entitled to a presumption of validity for the additional reason that the claim fails to state its basis with sufficient particularity. Although a proof of claim need not, of course, be as complete as a formal complaint, "proofs of claim should at least allege facts from which liability . . . can be seen to exist." *In re International Match Corporation*, 69 F.2d 73, 76 (2d Cir.1934). The conclusory allegation of consideration, contained in Claim Number 35, without reference to time or to the specific goods secured, is especially inadequate given the strict scrutiny which priority claims must undergo, as noted in Part B, *supra*.

Even if the proof of claim were given evidential effect, the defendant did not sustain its burden of proof as noted more fully immediately below in connection with the question of whether Claim Number 35 should be allowed as a general claim.

Lastly then, I find that the testimony of the debtor's president rebutted whatever weight the proof of claim carried. Moreover, despite the evidence produced by the defendant in support of its claims, which presumably covers the events and time relating to Claim Number 35, nothing in the record supports or even illuminates the nature of Claim Number 35. *See also In re Annin & Co.*, 95 F.2d 381, 383 (2d Cir.1938) ("where a claimant has attempted to establish by evidence the allegations of his proof of claim, he cannot be permitted to use those very allegations to supply a deficiency in evidence"). For those reasons, Claim Number 35 must be disallowed.

### COUNTERCLAIM

### A.

### Claim For Damage To Molding Machines

In September, 1980, the debtor, having found a purchaser for the molding machines, discovered that the cables connecting the machines to their control panel had been severed. The debtor attributes the damage to the defendant who on July 22, 1980 had the Guita Company move the machines approximately 50 feet on the first level. A representative of the Guita Company testified to the contrary that the machines were moved carefully with the control panel attached. From this conflicting testimony, it cannot be determined who caused the damage or when it occurred. Thus the debtor's counterclaim which sounded in negligence, as originally pleaded, must fail.

This is not dispositive of the question of damage to the machines, however, because the court permitted the debtor to file an amended complaint that alleges a bailment. The debtor, which failed to show by direct evidence the defendant's negligence, seeks the benefit of a presumption, found in the Connecticut law on bailments, to prevail on its claim. Where a bailment exists, proof by the bailor of the property's loss or damage makes out a *prima facie* case of negligence on the bailee's part. *Griffin v. Nationwide Moving and Storage Co., Inc.*, 187 Conn. 405, 446 A.2d 799 (1982); *Frissell v. John W. Rogers, Inc.*, 141 Conn. 308, 106 A.2d 162 (1954).

The debtor argues that the facts in this proceeding established an involuntary bailment which subjected the defendant to the same duties as a voluntary bailee because

the defendant asserted at least some control over the property. The defendant on the other hand contends first that the relationship between the parties was a tenancy at will or at sufferance but that if a bailment existed, the defendant's duties were minimal.

The Connecticut Supreme Court has generally defined the word "bailment" to be "a delivery of goods in trust, upon a contract, express or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered." *Zeterstrom v. Thomas,* 92 Conn. 702, 704, 104 A. 237 (1918). The contractual element of bailment, however, has not been rigidly applied by the Connecticut courts, *see, e.g., Frost v. Plumb,* 40 Conn. 111 (1873); *Wolf v. Sulik,* 93 Conn. 431, 106 A. 443 (1919), and the more recent cases examine primarily whether there was an "express or implied assumption of control over the property by the bailee." *Lissie v. Southern New England Telephone Company,* 33 Conn.Supp. 540, 543, 359 A.2d 187 (1976). This is consistent with the generally accepted view that, by operation of law, a bailment may arise from the lawful possession of property. *Seaboard Sand & Gravel Corporation v. Moran Towing Corporation,* 154 F.2d 399 (2d Cir.1946); *Ingersoll-Rand Financial Corporation v. Nunley,* 671 F.2d 842 (4th Cir. 1982).

The more specific issue of what, if any, bailment is created when a tenant's property remains behind after an eviction apparently has not been addressed in any reported Connecticut decision. Other courts have been reluctant to find a bailment when a tenant leaves behind property which is subsequently lost or destroyed. R. Brown, *The Law Of Personal Property* § 12.1 at 320 (3d ed. 1975), citing, *Row v. Home Savings Bank,* 306 Mass. 522, 29 N.E.2d 552 (1940); *Boston Educational Research Company v. American Machine and Foundry Co.,* 355 F.Supp. 1272 (D.Mass.1973) (applying Connecticut law); *Banks v. Pierpont Estates, Inc.,* 27 Misc.2d 778, 209 N.Y.S.2d 421 (1961).

In the instant proceeding, the debtor's president stated on direct examination that there was no agreement concerning the personal property left at 25 Van Zant Street. Thus, there was no bailment by contract. Whether the defendant exercised sufficient control over the property to create a bailment raises a closer question.

The debtor did not have unrestricted access to the premises in the sense that he had to be admitted by the defendant's security officer. Such entry was never denied, and once inside, the debtor had essentially complete control of its property. There was some testimony to the effect that the defendant's security officer was under instruction not to permit the debtor to remove the molding machines without a court order, but that policy was not evidenced by any event.

The question of control is complicated by the intervening bankruptcy. In important respects, the bankruptcy gave the defendants possession an involuntary character as may be illustrated by the fact that on September 15, 1980, the defendant applied to the bankruptcy court (Trevethan, J.) for permission to remove the machines. Judge Trevethan, noting the debtor planned to remove the machines on its own accord by the end of the month, denied the application. Certainly, the machines were not voluntarily on the premises after September 15, 1980.

Viewing the totality of the circumstances, I conclude that it is inappropriate to impose on the defendant all the obligations of a more traditional bailee. This is not to say that the defendant could act unreasonably with respect to the property, but as noted, there was no persuasive evidence that it did.

### B.

#### *Claim For Lost Property*

The debtor alleges in Count 2 of its amended counterclaim that the defendant "exercised exclusive control and possession" over certain property of the debtor left at 25 Van Zant Street and that due to the defendant's negligence the estate lost approximately $3,000.00. At trial, the defendant's president testified that certain property was missing but the list prepared by the

sheriff at the time of the eviction, contained none of the allegedly lost items.

 It is simply unclear what, if any, property was lost, and thus the plaintiff has failed to sustain its burden of proof under Count 2. But assuming *arguendo* that property was lost, there was no evidence that the defendant's negligence caused the loss. On the contrary, the defendant appeared to act with due care, and, as concluded above, the debtor can find no comfort in an alleged bailment.

### III.

Consonant with the above, judgment will enter [1] allowing Claim Number 3 in the amount of $1,800.00, as a general claim; [2] allowing Claim Number 4 in the amount of $1,016.60, as a general claim; [3] allowing Claim Number 34 only in the amount of $4,332.32, as a priority claim and disallowing the remainder of Claim Number 34; [4] disallowing Claim Number 35 in its entirety. Judgment will also enter in favor of the defendant on the debtor's counterclaim.