**In the Matter of GEORG JENSEN, INC., a/k/a Kenton Collection, Debtor.**

**Bankruptcy No. 78 B 1317.**

United States Bankruptcy Court, S. D. New York.

Oct. 17, 1979.

Delson & Gordon, New York City, for debtor; Jeffrey M. Samberg, New York City, of counsel.

Michael A. Lacher, P. C., New York City, for claimant.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in possession, Georg Jensen, Inc., has objected to the claim filed by Michael A. Lacher, for legal services performed by his firm for the debtor's benefit prior to the filing of the petition for an arrangement under Chapter XI of the Bankruptcy Act. The claim, amounting to $118,309.43, covers the period from October, 1977 through June, 1978, and is predicated on an alleged oral agreement between the attorney, Michael A. Lacher and Mr. Julio Tanjeloff, the debtor's president.

The matter came on for a hearing, at which time the parties appeared and submitted evidence which resulted in the following Findings of Fact and Conclusions of Law;

## FINDINGS OF FACT

1. The debtor, Georg Jensen, Inc., filed its petition for an arrangement under Chapter XI of the Bankruptcy Act on July 18, 1978. Pursuant to the authority expressed in § 343 of the Act and in accordance with Bankruptcy Rule 11–23 the debtor was authorized by order of this court to conduct its business and manage its property as a debtor in possession.

2. The debtor is a publicly owned corporation that presently operates two retail stores for the sale of quality giftwares in Scarsdale, New York and Manhasset, New York. Its president is Julio Tanjeloff.

3. The claimant, Michael A. Lacher, is an attorney, who together with associate attorneys maintains a law firm in New York City. Mr. Lacher has filed a proof of claim in the sum of $118,309.43 for legal services which he and his associates performed for the debtor from October, 1977 through June, 1978. The claim is based on a fee of $125 per hour for Mr. Lacher's work and $75 per hour for his associates. Mr. Lacher charged 820 billable hours for himself and 418 billable hours for his associates.

4. In October, 1977, Mr. Lacher and the debtor's president, Mr. Tanjeloff, entered into negotiations for the retention of the services of Mr. Lacher and his firm for the debtor and its affiliates. Mr. Lacher informed Mr. Tanjeloff that his basic rate was $125 per hour for his work and $75 per hour for the services of his associates. However, Mr. Lacher said that his firm would provide legal services at a reduced rate of $90 per hour for Mr. Lacher's services and $30 per hour for his associates' work if the debtor would pay Mr. Lacher's firm a retainer of $1500 per week on account of the services to be performed by the law firm.

5. Mr. Tanjeloff agreed to these terms on behalf of the debtor and requested that the weekly bill for the legal services should include all the legal services rendered to the debtor and its affiliates without a breakdown as to each matter involved. Although Mr. Lacher testified that this was not his usual billing method, he nevertheless complied with Mr. Tanjeloff's request, who indicated that not only would Lacher represent the debtor, but that he would also represent the debtor's affiliates. Mr. Lacher testified that Mr. Tanjeloff told him that through Georg Jensen, Inc. he had shareholdings in various companies but that Mr. Lacher was to be paid by the debtor, since all of his work would in reality be in the debtor's behalf. During the period of Mr. Lacher's services for the debtor and its affiliates, he submitted bills to the debtor in accordance with this agreement.

6. The debtor's agreement to pay Mr. Lacher for the legal services performed for the debtor and its affiliates was an original promise from, and a direct and independent obligation of, the debtor to Mr. Lacher. It was not collateral to the transaction nor was it in the nature of a guaranty of the obligation of the debtor's affiliates to Mr. Lacher for his services to them. There was no credible evidence to support the debtor's contention that its affiliates were primarily liable for Mr. Lacher's services and that the debtor was only secondarily liable if its affiliates did not pay.

7. Notwithstanding Mr. Tanjeloff's testimony that he informed Mr. Lacher of his

objection to the form of the first bill because it did not contain a breakdown by matters covered, he did not take any action to discontinue Mr. Lacher's services and made intermittent payments on account, all of which are corroborative of the agreement as found by this court.

8. The debtor failed to make the first $1500 per week payment, although it did make some payments. Nevertheless, Mr. Lacher's firm continued until April 12, 1978 to perform services to the debtor and its affiliates at the agreed rate of $90 per hour for Mr. Lacher's services and $30 per hour for his associates' work.

9. On April 13, 1978, Mr. Lacher directed a letter to Mr. Tanjeloff in which Mr. Lacher stated that since the debtor failed to pay his retainer of $1500 each week, Mr. Lacher was amending all his prior bills to reflect retroactively his regular schedule. Mr. Lacher further informed Mr. Tanjeloff that he would charge the debtor and its affiliates his regular rate in all subsequent billings.

10. By letter dated April 17, 1978, Mr. Tanjeloff returned Mr. Lacher's amended bill, stating: "It is not acceptable inasmuch as it is not in accordance with our agreement."

11. Upon receipt of Mr. Tanjeloff's letter of April 17, 1978, Mr. Lacher testified that he informed Mr. Tanjeloff that he was going to withdraw. Mr. Tanjeloff was then facing the threat of civil arrest on an outstanding federal warrant. Mr. Lacher further testified that in light of the fact that "[Mr. Tanjeloff] was about to go to jail . . . [he] hired us back and said we'll go back to your agreement . . . [at] the higher rate . . .". [Trans. p. 85]. On the other hand, Mr. Tanjeloff testified that he told Mr. Lacher to withdraw but that Mr. Lacher refused to do so.

12. Thereafter, Mr. Lacher and his firm continued to perform legal services for the debtor and its affiliates until June, 1978, one month prior to when the debtor filed its petition for an arrangement under Chapter XI of the Bankruptcy Act. During this period Mr. Lacher charged the debtor for 49 hours of his time and 36 hours of his associates' time, at the rate of $125 per hour for Mr. Lacher and $75 per hour for his associates. There is no evidence of any on account payments from the debtor during this period.

13. The total amount billed to the debtor at the rate of $125 and $75 per hour was $137,455.83 [including office expenses]. Since Mr. Lacher's claim is for $118,309.43, the difference of $19,146.40 was undoubtedly received by him in payment by the debtor. If Mr. Lacher would have billed the debtor at the reduced rate of $90 per hour for his services and $30 per hour for his associates' work, the total fee would have been $91,027.08 [including office expenses]. After taking into account the payments received in the amount of $19,146.40, Mr. Lacher's total claim would have been $71,880.68 [including office expenses].

14. The original agreement between the parties for Mr. Lacher's services of $90 per hour and for those of his associates at $30 per hour was conditioned upon the debtor's payment of a $1500 retainer each week. The debtor did not comply with this condition with the result that the debtor cannot hold Mr. Lacher to agreed upon rates of $90 and $30 per hour. However, there was no proof that the debtor agreed to pay the higher rates of $125 per hour for Mr. Lacher's services and $75 per hour for his associates' work in the event the debtor failed to pay the $1500 weekly retainer.

15. The evidence with respect to the services performed by the Lacher firm for the debtor after April 17, 1978 does not support a finding that the parties agreed that Mr. Lacher and his associates were entitled to rates of $125 and $75 per hour for their services.

16. Accordingly, having failed to satisfy the contractual condition precedent of paying a $1500 per week retainer, the debtor cannot hold Mr. Lacher to his duty of performing legal services at the $90 and $30 per hour rates. On the other hand, the claimant has failed to establish by a prepon-

derance of the evidence that the parties agreed to the higher rates of $125 and $75 per hour, either in October, 1977, during their original negotiations or thereafter in April, 1978.

17. Since the debtor could only have compelled the claimant to accept payment for his legal services at the rates of $90 and $30 per hour if it had satisfied the agreed $1500 per week retainer obligation, and since this condition was not satisfied, it then remains to be determined if the claimant has established a right to compensation in excess of the $90 and $30 per hour rates.

18. There was no credible evidence to refute the claimant's proof that he and his associates performed their services for the debtor and its affiliates as follows:

| Case | Mr. Lacher's hours | Ms. Lesser's hours | Mr. Magida's hours |
|---|---|---|---|
| Barton Press v. Georg Jensen | 59½ | 38¼ | 3 |
| Chase Manhattan Bank v. Georg Jensen | 85¾ | 6¾ | 15¼ |
| Eric Ventures v. Rosenthal China | 166 | 123¾ | 74¼ |
| Estragon Realty Corp. v. Georg Jensen | 102½ | 55¼ | 5 |
| 59th and Park Assoc. v. Georg Jensen | 36¼ | 3 | — |
| F. Harrach v. Astro Minerals | 10½ | 8 | ½ |
| Rosenthal Studio House v. Rosenthal, U. S. A. | 19½ | 11 | 6 |
| Port Myrion Potteries v. Kenton Wholesale Inc. and Georg Jensen | 51¼ | 19 | 4 |
| Stove Prop. v. Georg Jensen | 57½ | 5 | 3 |
| Georg Jensen v. Estragon Realty | 53¾ | 9¼ | 3½ |
| Rosenthal, U. S. A. v. Jorge Ventures | 38½ | 3¼ | ½ |
| Citca Trading Corp. v. Astro Minerals | 9¼ | 9¾ | — |
| 57th Madison Corp. v. Georg Jensen | 17½ | 2½ | — |
| Adcor Realty v. Georg Jensen | 29 | 1½ | 1¼ |
| Georg Jensen v. Adcor Realty | 16½ | 1 | ½ |
| Georg Jensen v. Block China | 12½ | ¾ | — |
| Con Edison matter | 5½ | — | — |
| Jensen trademarks | 48¾ | — | — |

Thus, Mr. Lacher performed 820 billable hours and his associates billed for 418 hours.

19. The court has examined the files submitted in evidence by the claimant reflecting his firm's activities on behalf of the debtor and its affiliates in various matters. In the main, these efforts were directed toward vacating restraining orders and judgments obtained against the debtor and its affiliates and delaying numerous collection efforts directed against the debtor and its affiliates, all of which reached a crescendo in the Spring of 1978, culminating in the debtor's filing of its Chapter XI petition in June, 1978.

20. The claimant also performed services in counselling to Mr. Tanjeloff in connection with his acquisition of the debtor at a prior bankruptcy sale in which Mr. Tanjeloff claims that he was defrauded by certain banks as to the value of the debtor's inventory which he acquired at the bankruptcy sale. The claimant offered no independent evidence as to the value of these services. Such evidence is unnecessary if this court were merely dealing with an attorney's application for an allowance in a bankruptcy matter. However, the instant claim is not to be determined in the context of bankruptcy standards since it relates to

the value of services performed by counsel prior to the Chapter XI petition.

21. The claimant has not established by a preponderance of the evidence that his firm's services are reasonably worth $118,-309.43, as claimed. Indeed, a careful evaluation of all of the services performed in each of the matters involved might not even justify all of the time spent for which compensation is claimed.

22. The bulk of the services in question were performed during the period from October, 1977 to April, 1978, during which time the claimant continued to render legal assistance to the debtor and its affiliates at the agreed rate of $90 per hour for himself and $30 per hour for the services of his associates, notwithstanding that the debtor repeatedly failed to pay the claimant the required on account retainer of $1500 per week. The claimant's failure to discontinue servicing the debtor and his failure to withdraw from his engagement until one month before the debtor filed its Chapter XI petition are factors which detract from his belated effort to insist upon the performance of the condition.

23. In light of the foregoing, the court finds that the claimant waived the right to insist upon the receipt of a weekly retainer of $1500 per week as a condition precedent to the debtor's right to pay for the claimant's legal services at the rates of $90 per hour and $30 per hour.

24. The claimant has established his claim for legal services performed by his firm for the debtor and its affiliates at the rate of $90 per hour for himself and $30 per hour for his associates for a gross total of $91,027.08 [including office expenses], less $19,146.40 previously paid, for a net allowable claim of $71,880.68 [including office expenses].

## DISCUSSION

An attorney and his firm who performed legal services for the debtor and its affiliates before the debtor filed its petition for an arrangement under Chapter XI of the Bankruptcy Act is met with the defense that the oral arrangement between the parties is barred by the New York Statute of Frauds as expressed in § 5–701(a)(2) of the General Obligations Law, which provides:

"a. Every agreement, promise or understanding is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

. . . . . .

2. Is a special promise to answer for the debt, default or miscarriage of another person;"

The debtor urges that its promise to pay for the services performed for the debtor's affiliates in effect amounted to a promise to answer for the debt of another, namely the affiliates. It is clear that if the agreement in question amounted to a collateral promise to pay the debt of another, the Statute of Frauds would mandate a written agreement. *Richardson Press v. Albright*, 224 N.Y. 497, 121 N.E. 362 [1918]; *Rosco Lumber Co. v. Reynolds*, 124 App.Div. 539, 108 N.Y.S. 1018 [2d Dept.1908]; *Alber-Wickes Platform Service v. Freiburg Passion Play in English*, 141 Misc. 480, 252 N.Y.S. 209 [Sup.Ct.1931]. The essential test "is whether the party sought to be charged is the principal debtor, primarily liable, or whether he is only liable in case of the default of another third person." *White v. Rintoul*, 108 N.Y. 222, 15 N.E. 318 [1888]. This court has found that the debtor's promise to pay for the legal services performed for it and its affiliates was an original promise from, and a direct and independent obligation of, the debtor to the claimant. Therefore, the authorities relied upon by the debtor, which involve collateral agreements leading to guaranty relationships, are inapposite; the Statute of Frauds is no defense to the claim filed by Mr. Lacher.

In Bankruptcy Proceedings the creditor has the burden of establishing his claim. *In re Gorgeous Blouse Co., Inc.*, 106 F.Supp. 465 [S.D.N.Y.1952]. However, he is aided by the presumption arising under Bankruptcy Rule 301(b) that a proof of

claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim, in which case the burden of going forward with rebutting evidence is on the debtor. *In re Avien, Inc.*, 390 F.Supp. 1335 [E.D.N.Y.1975]; *Gorgeous Blouse Co., Inc.*, supra.

 The oral agreement between the parties called for the claimant to perform prepetition legal services for the debtor and its affiliates at the rate of $90 per hour for his services and $30 per hour for the services of his associates on condition that the debtor pays the claimant a retainer of $1500 per week. The retainer payment was a condition precedent that was not satisfied. A condition precedent is an act or event which must exist or occur before a duty of immediate performance of a promise arises. *Internatio-Rotterdam, Inc. v. River Brand Rice Mills, Inc.*, 259 F.2d 137 [2 Cir. 1958] cert. den. 358 U.S. 946, 79 S.Ct. 352, 3 L.Ed.2d 352 [1959]. Thus, since the debtor failed to make the $1500 per week payments the claimant's duty to bill the debtor at the rates of $90 and $30 per hour was discharged.

Although the nonoccurrence of the condition with respect to the $1500 per week retainer payments entitled the claimant to rescind or to treat the contractual obligations as discharged, he did no such thing. The claimant and his firm continued to provide legal services for the debtor and its affiliates from October, 1977 to June, 1978; billing for those services at the rate of $90 per hour for Mr. Lacher and $30 per hour for the work of his associates. It was not until the debtor reached its financial nadir and was compelled to file its Chapter XI petition that the claim asserted the debtor's nonperformance of the condition and retroactively increased his previously submitted bills. In these circumstances, the court has found that the debtor had waived the condition that the debtor pay an on account retainer of $1500 per week.

A condition precedent in favor of one of the parties to an agreement may be waived by that party, thereby making the other party's obligation unconditional. *Walter E. Heller & Co. v. American Flying Airline Corp.*, 459 F.2d 896 [2 Cir. 1972]; *National Utility Service Inc. v. Whirlpool Corporation*, 325 F.2d 779 [2 Cir. 1963]; 3A *Corbin on Contracts*, § 755. Thus, Mr. Lacher's waiver of the $1500 per week on account payments as a condition precedent resulted in permitting him to perform legal services for the debtor but limiting his recovery for such services at the rate of $90 per hour for his work and $30 per hour for the services of his associates.

### CONCLUSIONS OF LAW

1. The debtor's objection to the claim filed by Michael A. Lacher for legal services performed by his firm for the debtor and its affiliates is denied.

2. The claimant, Michael A. Lacher, has established his claim against the debtor for prepetition legal services in the net amount of $71,880.68 [including office expenses], which amount shall be treated as allowed.