**In re Ernest BENNETT, Debtor.**

**Bankruptcy No. 85 B 20572.**

United States Bankruptcy Court,
S.D. New York.

Feb. 26, 1988.

Nathan Horowitz, White Plains, N.Y., for debtor.

Yesnowitz, Yesnowitz & Handler, New York City, for plaintiff.

## DECISION ON OBJECTION TO CLAIM

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This Chapter 13 debtor, Ernest Bennett, seeks to expunge the proof of claim filed by Ernest Crute. The only witnesses were the parties themselves. Each party claims to be more earnest than the other. Each has testified differently as to the extent of the renovation work that the debtor, Ernest Bennett, agreed to perform on Ernest Crute's house. They also disagree as to the quality of the work and the condition of the premises when the debtor left the job. Each Ernest claims that the other owes him money. They also disagree as to who was responsible for furnishing the materials for the job. Indeed, the debtor, Ernest Bennett, testified that the agreement for repairing Ernest Crute's house was oral, whereas Ernest Crute testified that the agreement was in writing, but that he did not have the original contract. The photocopy of a written contract, which was unsuccessfully offered in evidence by Ernest Crute, contained a signature which the debtor, Ernest Bennett, denied was his. The signature purporting to be that of Ernest Bennett was clearly not the same as Ernest Bennett's endorsement on the back of the progress checks given to him by Ernest Crute. There is no dispute that Ernest Crute paid the debtor at least $20,200 for repairs that the debtor performed at Ernest Crute's house. Ernest Crute maintains that the work was done poorly and that he sustained damages in the sum of $34,821, for which he filed a proof of claim. The debtor denies any liability to Ernest Crute and seeks to expunge his claim.

## FINDINGS OF FACT

1. On December 11, 1985, the debtor, Ernest Bennett, filed with this court his petition for relief under Chapter 13 of the Bankruptcy Code. He is engaged in business as a general contractor.

2. The claimant, Ernest Crute, used to operate a motion picture theatre, known as the Dover Theatre, located in the Bronx, New York, where he resided with his family until 1983, when he purchased a single family home on South 11th Avenue in Mount Vernon, New York.

3. In 1983, the debtor, Ernest Bennett, maintained an office on the same street where Mr. Crute's Dover Theatre was located. In June of 1983, Mr. Crute engaged the debtor to perform renovations at the house Mr. Crute had just purchased in Mount Vernon, New York. Mr. Crute informed the debtor that he and his family had to move into their house in September of 1983 and that it needed certain repairs before they could move in.

4. The debtor testified that he was engaged by Mr. Crute to repair the front porch, to replace and install electrical outlets and fixtures, install some outside doors, install about fifteen windows, perform some demolition work such as the removal of plaster, wood, and floor work, install a drop ceiling downstairs, and arrange to have someone install cabinets in the kitchen. Crute claimed that the contract price was approximately $21,500,

whereas the debtor claimed it was approximately $26,000 or $27,000.

5. The debtor testified that he was obliged to furnish all of the materials for the job, for which he was given a $3000.00 advance by Mr. Crute in June of 1983. The debtor claims he commenced work a day or two after Crute and he came to their agreement, whereas Crute claims he commenced work on June 22, 1983.

6. The debtor testified that Mr. Crute appeared at the house every week while the work was being performed and speculated that photographs of the work in progress were taken by Mr. Crute. Additional work had to be performed as the debtor proceeded with the job. Instead of repairing the porch the debtor said he had to build a complete porch. Difficulties arose when light fixtures and tools were stolen from the house. The debtor had to replace the stolen fixtures. Subsequently, Mr. Crute said he wanted new kitchen cabinets installed. The debtor said that he could arrange to have a specialist perform this work.

7. The debtor received progress checks from Mr. Crute totalling $20,200, although he claims he was entitled to receive $30,000 because of the extra work he was asked to perform. The debtor testified that Mr. Crute asked him to reduce the size of the kitchen windows as additional work after he commenced the job. The debtor also said that he was asked to do plaster work throughout the entire house, which he did. The debtor testified that Mr. Crute did not complain about the quality of the work while the job was in progress.

8. The debtor admitted that he was not a licensed general contractor when he agreed to perform the work. However, he said that Mr. Crute was aware that he performed this type of work for Urban Homes Management.

9. The debtor testified that the debris from the construction was removed as it accumulated and that the job was about 90% complete at the end of August, 1983, when Mr. Crute visited the debtor's office and demanded that the work be completed faster because he had to move his family into the house by September. The debtor said that Mr. Crute threatened him with a gun and said that if the work was not finished by September he would shoot the debtor. Mr. Crute denies that he threatened the debtor with a gun. The debtor did not return to the job after this incident.

10. The debtor contends that he performed work for Mr. Crute valued at approximately $30,000; that he performed the work properly; that he owes nothing to Mr. Crute, whereas Mr. Crute is indebted to the debtor for the additional work in excess of the $20,200 that was paid to the debtor.

11. Mr. Crute testified that the debtor agreed to do the following work: Finish the attic and cover the beams and open floor; Plaster and restore the moulding in two upstairs bedrooms and a third room; Install paneling in the master bedroom; enlarge a closet; open a doorway to the upstairs bathroom; remodel and tile the upstairs bathroom; install a kitchen with new cabinets; remodel and tile the downstairs bathroom and install new fixtures; redo all electrical wiring, with seven outlets per room; replaster the hallway; install drop ceilings downstairs to cover pipes; install a new den ceiling and new outlets; change all doors in three outside entrances; install 23 windows; reduce the size of the windows; remodel and tile the half bathroom on the lower level; install a new front porch; and, repair the oil burner and the boiler in the basement.

12. Mr. Crute testified that the debtor agreed to perform this work for $21,500 and that the debtor submitted a written contract to Mr. Crute which itemized the work to be done. He testified that he was given a copy of the signed contract and that the debtor retained the original. The authenticity of the photocopy which Mr. Crute offered in evidence was denied by the debtor. The debtor said that he did not give a written contract to Mr. Crute and that the signature on the photocopy was not his. Because the authenticity of the photocopy was disputed, it was inadmissible under Rule 1003 of the Federal Rules of Evidence. A comparison of the signa-

ture on the contract with the debtor's endorsement on the progress checks which Mr. Crute gave to the debtor clearly established that the signatures were not the same.

13. The debtor testified that a general contractor required to supply the materials and perform the labor for the work which Mr. Crute said he expected to be performed would charge much more than the $21,500 that Mr. Crute testified he agreed to pay.

14. Mr. Crute submitted in evidence 12 checks totalling $20,200 which he said he gave to the debtor during the course of the work. [Exhibit B]. Additionally, he testified that he gave $400 in cash to the debtor to be given to a building inspector who stopped the debtor because he lacked a general contractor's license. Mr. Crute testified that the debtor said he had to give the $400 "to get the inspector off his back." Mr. Bennett denied such a transaction occurred.

15. Mr. Crute testified that in late August or early September, 1983, he approached the debtor and informed him that he had not lived up to his agreement. Mr. Crute said that he had given his landlord notice of his vacating his apartment and he had to move into the house immediately. Nonetheless, the number of the debtor's workers on the job had dropped from four in June down to one in July and August. Mr. Crute testified that he said to the debtor that there was no way he could complete the work by September.

16. Mr. Crute said that he gave the debtor $700 to buy cabinets, which he never received, nor were they installed in his house. He said that the debtor showed him a receipt for the purchase of the cabinets. [Exhibit C]. The debtor denied that he ever purchased cabinets or that he was responsible for installing kitchen cabinets. He testified that he would provide Mr. Crute with a specialist who would do this work.

17. Mr. Crute offered in evidence 26 photographs which he said he took in November and December of 1983 to show that the debtor's work was incomplete. [Exhibit D]. The debtor denied that his work was incomplete. He testified that these were photographs that Mr. Crute took while the work was in progress.

18. Mr. Crute offered 19 receipts for work and supplies which he testified he was required to order for the purpose of repairing and completing the work he expected the debtor to perform. [Exhibits E through X].

19. The materials purchased with these receipts included tiles, concrete, fixtures for a bathroom, windows and other items. Some of the receipts pre-dated the debtor's commencement of work on Mr. Crute's house. Mr. Crute did not establish that the materials purchased, contained in the receipts, were utilized in his house.

20. Mr. Crute further testified that he bought paneling for installation throughout the house because the debtor did not repair cracked walls. [Exhibit Q].

21. On cross examination it was brought out that even in the written contract which the debtor disputed, there was nothing stated as to the installation of moulding, or the enlargement of a closet or the replacement of a furnace burner, or as to three entrances to the house, or as to roof repairs or as to thermopane windows.

22. Two of the receipts reflect that the items were billed to the Dover Theatre, which was the motion picture theatre that Mr. Crute operated in the Bronx, New York.

23. The receipts were admitted for the limited purpose of corroborating Mr. Crute's testimony that he purchased items and incurred expenses in October of 1983, after the debtor left the job. The receipts were not admitted for the truth of the matters stated therein because no vendor testified as to the transactions and whether the items were sold to Mr. Crute personally or to his theatre.

24. Mr. Crute did not offer any checks or proof as to the payment of any of the items reflected in the receipts.

25. Mr. Crute did not produce any other witnesses to testify as to what the house looked like when the debtor left the job or

as to what work was performed at the house thereafter, or as to the value of the work performed.

26. Based upon the foregoing evidence, the court finds that the case boils down to a matter of credibility as to the testimony of the two parties. There are some substantial gaps with respect to Mr. Crute's claim. The main negative aspect is the lack of an authentic written contract which Mr. Crute asserts as the basis for his claim. There is also some doubt as to whether any competent contractor would furnish the materials and perform the labor that Mr. Crute contends should have been performed by the debtor for $21,500. There is also a serious question as to the quality of the work performed by the debtor and the condition of the house in September of 1983; the parties disagree as to when the photographs were taken by Mr. Crute. There is a serious question as to what Mr. Crute actually paid after the debtor left the job and whether all of the materials purchased by Mr. Crute were installed at his house and not intended for his theatre.

27. At most, the evidence is in equilibrium, but clearly it does not tip in favor of the claimant. The court cannot find that Mr. Crute has sustained his burden of proving his claim by a preponderance of the credible evidence in this case.

## DISCUSSION

A properly filed proof of claim is deemed allowed under 11 U.S.C. § 502(a) unless a party in interest objects. The debtor, as the objecting party, must go forward and produce sufficient evidence to rebut the claimant's *prima facie* case. *Simmons v. J.J. Savell* (*In re Simmons*), 765 F.2d 547, 552 (5th Cir.1985); *Global Western Development Corporation v. Northern Orange County Credit Service, Inc.*, 759 F.2d 724, 727 (9th Cir.1985); *In re Gorgeous Blouse Co., Inc.*, 106 F.Supp. 465 (S.D.N.Y.1952); *In re Greene*, 71 B.R. 104, 106 (Bankr.S.D.N.Y.1987). If the objecting party rebuts the *prima facie* case, "it is for the claimant to prove his claim, not for the objector to disprove it." *In re Gorgeous Blouse Co., Inc.*, at 465. Accord, *In re Greene*, 71 B.R. 106; *In re Anchorage Boat Sales, Inc.*, 29 B.R. 275, 277 (Bankr. E.D.N.Y.1983); *In re Georg Jensen, Inc.*, 1 B.R. 239, 245 (Bankr.S.D.N.Y.1979).

In the instant case, the debtor presented sufficient evidence that he completed satisfactorily the work he agreed to perform at the claimant's house. This evidence rebutted the *prima facie* claim filed by Ernest Crute. Hence, it than devolved upon the claimant to prove his claim by a preponderance of the credible evidence. The claimant failed to prove that the work was covered by a signed contract as alleged; that the debtor agreed to perform all the work that the claimant contended the debtor was obligated to perform at the claimant's house; that the debtor failed to perform the work properly and the amount that the claimant paid for materials and labor to satisfy that portion of the debtor's obligation which he allegedly failed to complete in accordance with the actual contract between the parties. The gaps in the claimant's proof prevent this court from determining that the claimant established his case by a preponderance of the evidence.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The claimant, Ernest Crute, has failed to sustain his burden of proving his claim of $34,821 by a preponderance of the credible evidence in this case.

3. The debtor's motion to expunge the claimant's proof of claim in the sum of $34,821 is granted.

SETTLE ORDER on notice.