**In re Lloyd M. KAHN, Debtor.**

**Bankruptcy No. 90 B 20006.**

United States Bankruptcy Court, S.D. New York.

May 11, 1990.

Peter W. Sluys, Pearl River, N.Y., for debtor.

Patrick J. Bliss, Goldman & Fleisher, New City, N.Y., for claimant.

## DECISION ON MOTION TO STRIKE PROOF OF CLAIM

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 13 debtor, Lloyd M. Kahn, has objected to the amended proof of claim filed by his wife, Carol Wolf Kahn, in the sum of $53,831.00. The debtor's wife claims amounts due for checks which the debtor issued on a checking account [1] for some of his obligations, including legal fees, credit card expenses, liability on a car lease, funds paid to the debtor's two sons from his previous marriage, and checks issued by the debtor by signing his wife's signature.

The debtor argues that these expenses do not give rise to allowable claims against him by his wife. Additionally, the debtor contends that a $30,000.00 note which he signed, payable to his wife, with respect to some of these expenses, was signed by him under extreme emotional duress and at a time when his wife was in the process of evicting him from her apartment. Accordingly, the debtor maintains that he was not psychologically competent to sign the note which his wife prepared.

## FACTS

1. On January 3, 1990, the debtor, Lloyd M. Kahn, filed with this court a petition for rehabilitative relief under Chapter 13 of the United States Bankruptcy Code.

2. The debtor is a doctor of podiatry who is no longer practicing his profession. He has been indicted for medicaid fraud in that it is alleged that he overcharged for health items which were not custom-made, as billed, in the sum of approximately $1,250.00. The debtor has fallen on hard times, which were compounded by matrimonial difficulties.

3. On June 25, 1989, the debtor married the creditor, Carol Wolf Kahn, and moved into her cooperative apartment in Nyack, New York. He had two sons by a previous marriage who visited him, but did not reside in the new matrimonial residence.

4. The debtor informed Carol Wolf Kahn before their marriage that he expected a substantial inheritance and that they would purchase a new home when he received these funds. As it turned out, he later advised his wife that the funds were tied up in an administration proceeding and that he did not have access to them for the purchase of a new house, for which he had already put down a deposit of $30,000.00 and then stopped payment of the check.

5. It also appears that the debtor's position on the faculty of the New York College of Podiatric Medicine was not as lucrative as he had led his wife to believe.

6. In November of 1989, Carol Wolf Kahn, learned that checks from a checking account which was maintained at the National Westminster Bank were missing. She asked her husband about these missing checks and was informed that he did not have any information as to the whereabouts of the checks. She reported their disappearance to her bank. On or about December 1, 1989, the bank returned can-

---

1. Although there was some testimony that the checking account was a joint account, the only name printed on the face of the check is that of Carol Wolf.

celled checks totalling approximately $1,834.00 which were signed by the debtor for the payment of some of his expenses.

7. At about this time, she also learned that the debtor was about to be indicted for medicaid fraud.

8. Carol Wolf Kahn also learned that the debtor had used her credit cards to charge expense items that he incurred. She also discovered that the debtor's salary had been garnished by his previous wife.

9. Mrs. Kahn testified that on December 1, 1989, she realized that she had a major crisis in confidence and that she discovered she was living with a stranger.

10. On Friday, December 1, 1989, Carol Wolf Kahn asked the debtor to take his belongings and leave her apartment. She also prepared a note in which the debtor acknowledged that he owed her $30,000.00 for her outlay of funds for him, which the debtor signed and had notarized. The note reads as follows:

DATE: December 1, 1989

I Lloyd Kahn do agreed to the following:

1. That I owe Carol Wolf Kahn the sum of $30,000 payable for her outlay of funds towards myself, my children's support, my own legal bills incurred prior to the marriage, medical bills for children, my professional bills, office rent, past loans incurred prior to the marriage.

2. That I will endorse over any lump sum bonus, legal awards, inheritance checks to Carol Wolf Kahn until the above $30,000.

3. That I will continue to carry full life insurance coverage for Carol WOlf (sic) Kahn until the above $30,000 sum has been paid in full.

4. That I will continue to carry full blue cross, blue shield, major medical and dental coverage for Carol Wolf Kahn and her children, Jason Wolf and Spencer Wolf until 12/31/90.

5. That I agree to pay all car payments for the lease of a 1990 Mitsubishi Galant in Carol Wolf Kahn's name until such time as she can end the lease.

6. That I have no claim to the 1986 Honda Accord registered in Carol Wolf's name.

Signed Lloyd M. Kahn

Dated (12/2/89)

Notarized SWORN TO ME THIS 2ND DAY OF DEC. 1989 AT NANUET NY TOWN OF CLARKSON CTY OF ROCKLAND STATE OF NY

s/ Joseph S. Sigillo

Notary Public, State of New York

No. 44-3052925

Certificate Filed in Rockland County

Term Expires 4/30/91

11. On Saturday, December 2, 1989, the debtor asked his wife to allow his son to use her Honda automobile to take his driver's test. She agreed on the condition that he perform certain tasks, including turning over certain payments he expected to receive from his patients, totalling approximately $5,000.00. If he failed to comply with her demands, his wife threatened to disclose his financial improprieties to a list of his friends, associates and colleagues. This understanding was also typed by Carol Wolf Kahn and given to the debtor. The message reads as follows:

December 2, 1989

Lloyd

If you want to have the Honda for Jarret's driving test Monday Morning, you must:

1. Return the mailbox key for Apt 1c, 103 Gedney St. Nyack, NY today.

2. Return the Mobil card I had issued in your name today.

3. Fix the tire on the Mitsubishi and return the car intact to me Monday morning.

4. Call Gail by this evening and tell her to send the Clothing money to me.

5. Return my typewriter from Ian by Sunday evening.

6. Move all your belongings from this apt (1c) by Sunday evening.

In addition:

If you do not turn over to me the money you receive from your surgeries by Monday December 18, that is $2450 plus $2000 plus $1000 for current Mobil, beep-

er, TKR, College Dance, totalling approximately $5000, I promise to call the following people and not limited to the following people, and fully disclose the entire situation.

1. Jarret
2. Ian
3. Gail Kahn
3. (sic) Joseph Liberman
4. Peter Wilks
5. the other Yale guy
6. Gary Lipton and offer my services
7. Mr. Meekins and offer my services
8. Sylvia Shuster
9. Judy Englehardt
10. Rose Rotfus
11. Marilyn Drayer
12. Paul Brown
13. Your high school reunion group, especially Susan Tackle.
14. Dave Grimes
15. Cantor Weinflash
16. Dick Price
17. John Waldman

12. A psychologist called by the debtor testified that he had been counselling the debtor for emotional stress. He had treated the debtor for his emotional problems during the debtor's previous marriage. The psychologist also consulted with the debtor after his crisis with his present wife on December 1, 1989. The psychologist counselled the debtor on December 19, 1989 and on January 2, 9, and 23, 1990. There were no other sessions because the debtor did not pay the psychologist's bills for the previous sessions.

13. Based upon what the debtor informed the psychologist, he concluded that the debtor suffered from depression due to humiliation, rejection by his wife, and that fact that he was indicted for medicaid fraud, all of which impaired the debtor's mental capacity on December 19, 1989, the date of the debtor's first visit following his second marriage.

14. The psychologist could not testify with personal knowledge as to the debtor's mental capacity on December 1, 1989 when the debtor signed the note acknowledging a $30,000.00 obligation to Carol Wolf Kahn.

15. Although the debtor may have been depressed on December 1, 1989, there was no credible proof that he was imcompetent to sign the $30,000.00 debt acknowledgment, which the debtor thereafter had notarized.

16. The debtor did not deny the accusation that he forged his wife's name on checks which he drew on the checking account and made payable to him. Nor did the debtor deny that he incurred credit charges, auto rental fees, legal fees, expenses for his sons by his previous marriage, their wedding expenses, and personal expenses, all of which were paid from Carol Wolf Kahn's bank account.

17. To what extent the debtor's wife can claim reimbursement for these expenses and funds, appropriated by the debtor, is not an open question because the debtor has signed an acknowledgment of indebtedness for $30,000.00. Indeed, the debtor further acknowledged this $30,-000.00 debt to his wife when he wrote a letter to his attorney on December 6, 1989 which states as follows:

Beeper #          Lloyd M. Kahn, D.P.M.
(914)–286–8207  P.O. Box 636
                         Nanuet, N.Y. 10954–636
                         December 6th, 1989

Dear Mr. Sluys:

In order to protect the financial interests of Carol Wolf Kahn, *please draw* up a short paper stating that the initial $30,-000 in proceeds from the cases against George Wald and/or/ Gary Lipton go to Carol Wolf Kahn.

When this note is drawn up, please contact (telephone) me, and I will come into (sic) sign same.

Thanks again—
s/ Lloyd M. Kahn
Lloyd M. Kahn

18. As part of her $53,831.00 claim, Carol Wolf Kahn claims the continuing lease payments on the 1990 Mitsubishi Galant which she rented in her name for the debt-

or's use. The vehicle is still in her possession.

19. The total cancelled checks and documentary evidence which Carol Wolf Kahn submitted in evidence, did not fully substantiate her claim for $53,831.00 or support a liability of the debtor in this amount. However, the debtor's signed acknowledgment, dated December 1, 1989, together with his letter to his attorney, dated December 6, 1989, establish an admitted liability of $30,000.00 and a promise to pay the rental payments for the 1990 Mitsubishi Galant until such time as Carol Wolf Kahn "can end the lease." There was no evidence as to when the lease began, or how many payments were made by the debtor's wife. Moreover, it appears that since the debtor was evicted from his wife's apartment in December of 1989, he no longer had any possession or control over the 1990 vehicle leased in his wife's name. Therefore, the debtor's liability to his wife for the rental payments which he agreed to pay has not been sufficiently established for the purpose of qualifying the monetary amount that might be owing under this agreement.

20. The claimant has established that the debtor owes her the sum of $30,000.00, as reflected in his acknowledgment of debt dated December 1, 1989, which the debtor signed on December 2, 1989.

## DISCUSSION

■ Generally, there is no policy reason for denying a wife's legitimate claim against her husband in the event he files for bankruptcy relief. *Thompson v. England,* 226 F.2d 488 (9th Cir.1955); *Hiller v. Olmstead,* 54 F.2d 5 (6th Cir.1931). Where a wife has advanced funds on her husband's behalf, out of her separate property, and he promises to repay the loan when he is able to do so, or when his business shows a profit, the wife will hold a contingent claim against her husband's estate. *Thompson v. England, supra.* Under 11 U.S.C. § 502(c)(1), contingent or unliquidated claims may be estimated for allowance purposes. The claim established by the debtor's wife in this case is not contin-

gent or unliquidated. Apart from the rental payments for the Mitsubishi automobile which have not been appropriately proven, the debtor's wife has rebutted his objection to her claim by evidence of his acknowledgment of a $30,000.00 debt to her for his appropriation of her separate funds. Additionally, the claimant has advanced funds on behalf of the debtor, which he agreed to repay. There was no credible evidence that the debtor was incompetent on December 1, 1989 when he signed and caused to be notarized his acknowledgment of the $30,-000.00 debt to the claimant.

■ Pursuant to 11 U.S.C. § 502(a), a properly filed proof of claim is deemed allowed unless a party in interest objects. This provision is a codification of the well-settled practice, as expressed by Mr. Justice Holmes of "treating a sworn proof of claim as some evidence, even when it is denied." *Whitney v. Dresser,* 200 U.S. 532, 536, 26 S.Ct. 316, 317, 50 L.Ed. 584 (1906). Such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case. *Simmons v. J.T. Savell (In re Simmons),* 765 F.2d 547, 552 (5th Cir. 1985); *Global Western Development Corporation v. Northern Orange County Credit Service, Inc.,* 759 F.2d 724, 727 (9th Cir.1985); *In re Gorgeous Blouse Co., Inc.,* 106 F.Supp. 465 (S.D.N.Y.1952). If the objecting party rebuts the claimant's *prima facie* case, "it is for the claimant to prove his claim, not for the objector to disprove it." *In re Gorgeous Blouse Co., Inc.* at 465; *Accord, In re Greene,* 71 B.R. 104 (Bankr.S.D.N.Y.1987); *In re Anchorage Boat Sales, Inc.,* 29 B.R. 275, 277 (Bankr. E.D.N.Y.1983); *In re Georg Jensen, Inc.,* 1 B.R. 239, 245 (Bankr.S.D.N.Y.1979).

■ In the instant case, after the debtor produced evidence in support of this objection to his wife's claim, she proceeded to sustain her burden of proving her claim to the extent of $30,000.00. Although she has a claim for the Mitsubishi rental payments, the claimant failed to produce evidence as to when the lease began and the amount of her damages as a result of the debtor's breach of his agreement "to pay all car

payments for the lease of a 1990 Mitsubishi Galant in Carol Wolf Kahn's name until such time as she can end the lease."

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B).

2. The claimant has sustained her burden of proof that the debtor owes her the sum of $30,000.00 for her outlay of funds towards the debtor, his children by a previous marriage and for checks which the debtor issued to himself drawn on the claimant's checking account.

3. To the extent of the $30,000.00 debt to the claimant, the debtor's objection to her proof of claim is denied. The objection is sustained as to the $23,831.00 balance of the $53,831.00 claim.

SETTLE ORDER on notice.