**In re JCC CAPITAL CORP., Debtor,**

**Bankruptcy No. 92 B 20002.**

United States Bankruptcy Court,
S.D. New York.

June 25, 1992.

James C. Couri, pro se.

Theo Mairanz, Marvin Neiman, P.C., New York City, for Barry Leon, Arthur Leon, Leon, Tarlowe & Saper.

## DECISION ON OBJECTIONS TO CLAIMS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 7 debtor, JCC Capital Corp. ("JCC"), and its former principal shareholder and officer, James C. Couri ("Couri"), have objected to the proof of claim in the sum of $676,033.00 filed by Arthur Leon, his accounting firm, Leon, Turlowe & Saper ("LTS"), and his son, Barry Leon. Arthur Leon's claim is for funds which he advanced to the debtor, JCC, to fund litigation to pursue JCC's claims under a consulting contract with a California corporation known as Geminex Industries, Inc. ("Geminex"). LTS's claim is for $27,-000.00, representing accounting fees charged to the debtor, JCC.

The debtor and Couri dispute the amounts claimed to be owed to Arthur Leon and LTS and contend nothing is owed to them because they issued written general releases to the debtor and agreed instead to look to Couri personally for the repayment of any balance due, as reflected in a confession of judgment executed and issued by Couri.

## FINDINGS OF FACT

1. On January 2, 1992, the debtor, JCC, filed with this court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Such petition constituted an order for relief under 11 U.S.C. § 301.

2. Couri is the principal shareholder and executive officer of the debtor.

3. Arthur Leon and his accounting firm, LTS, for many years prior to the filing of the Chapter 7 petition by the debtor, JCC, performed accounting services for the debtor and also engaged in various business ventures with the debtor and Couri.

4. In June of 1987, the debtor entered into a consulting agreement with Cointel Company, the predecessor to Geminex, whereby the debtor agreed to provide certain management, financial and marketing services in exchange for certain payments which the debtor contends could exceed $1 million. Cointel Company was later merged into Geminex. Geminex unilaterally attempted to cancel the agreement. The debtor decided to pursue its claims against Geminex arising out of its termination of the consulting agreement with the debtor.

5. The debtor and Couri convinced Arthur Leon that the debtor's claims against Geminex were meritorious and valuable. Arthur Leon agreed to fund the debtor's pursuit of its claims against Geminex. Arthur Leon had already advanced to the debtor and Couri approximately $320,-000.00. He agreed to advance additional sums for the legal fees in connection with the Geminex litigation which ultimately totalled $140,211.40. Trial Exhibit C.

6. The debtor acknowledged its obligation to Arthur Leon for loans totalling $320,000.00 in a written agreement dated

June 26, 1989 (the "June 26th Agreement"). June 26th Agreement, at ¶ 4. The June 26th Agreement reflected the manner in which the parties would distribute any funds or settlement payments received from Geminex in the event JCC might realize on its claims against Geminex.

7. In paragraph 11 of the June 26th Agreement, it is provided that any settlement or abandonment of the debtor's claims against Geminex could be decided by a majority consisting of Arthur Leon, Barry Leon, their attorney, Jeremiah S. Gutman and John P. Robbins, attorney for Couri and the debtor.

8. Paragraph 19 of the June 26th Agreement provides that if Arthur Leon receives a distribution under the June 26th Agreement of anything less than the amount of advances made and expenses paid by him to fund the debtor's claims against Geminex, and after the exhaustion of all collateral securing such advances and expenses, Couri will execute a confession of judgment in favor of Arthur Leon in the sum of $180,000.00. Couri could satisfy the confession of judgment by paying Arthur Leon $60,000.00 within three years from its execution.

9. Paragraph 20 of the June 26th Agreement provides that simultaneously with its execution, the parties would execute general releases to each other "excepting only the rights and obligations of the parties pursuant to this agreement and including a provision that they become null and void if this agreement becomes null and void...."

10. Paragraph 24 of the June 26th Agreement provides as follows:

24. This agreement is intended to supersede and replace all other agreements, whether oral or in writing, or in the form of notes, pledges or other documents, between and among the parties hereto and such notes and documents shall be delivered by Leon on execution hereof to Robbins as escrowee and, upon efficacy of this agreement, endorsed as replaced by this agreement and delivered to Couri but, if this agreement becomes null and void, redelivered un-endorsed to Leon.

11. Simultaneously with the execution of the June 26th Agreement, the parties, including Arthur Leon, Barry Leon and LTS, executed general releases in favor of the debtor, Couri, his wife and daughters from all claims, with certain exceptions as follows:

Excepted from this release are the rights and obligations of the parties pursuant to an agreement dated June 26, 1989, among Arthur Leon, James C. Couri and others. This release will become null and void if said agreement becomes null and void.

12. There is no question that the June 26th Agreement became effective between the parties. Arthur Leon's attorney, Jeremiah Gutman, sent a letter to JCC's attorney, Jon P. Robbins, dated August 2, 1989, with copies to the parties, which stated:

The agreement dated June 26, 1989, among our clients and others has become effective as of July 27, 1989, when California counsel was retained and agreed to by all parties.

13. Pursuant to a written agreement dated November 9, 1989, Arthur Leon agreed to advance additional funds for legal expenses to pursue JCC's claims against Geminex. The November 9, 1989 agreement provides that in order to induce Arthur Leon to increase his $100,000.00 commitment for legal fees, Couri would name Barry Leon as a director of Geminex should Couri come into position to do so in the future as a result of the proposed litigation. The increased legal fee commitment by Arthur Leon is stated as follows:

3. In addition to the $50,000.00 already paid by Leon to Barry Fisher's firm, he will pay up to an additional $125,000.00 against hourly rates of $175.00 which may be increased annually by no more than 10% on the anniversary of the original retainer of July 21, 1989; Leon will pay out of pocket disbursements paid or incurred by the Fisher firm up to a maximum of an additional $25,000.00; all of such payments to be made as agreed between the Fisher firm and Leon.

14. The November 9, 1989 modification agreement between the parties also provides that the legal fees incurred by the parties, other than those expended to pay the Fisher firm in California to finance the litigation against Geminex, would be the individuals' responsibility. This point is stated as follows:

8. The parties further agree that any expenses heretofore incurred by any of them for legal fees or disbursements to any attorneys other than the Fisher firm shall be and remain their individual obligations and shall not be computed within the caps provided for in the agreement as modified by this supplemental agreement subject, however, to reimbursement under paragraph 13 of the agreement.

15. Sometime in 1990, the California law firm retained by Arthur Leon's New York attorney decided to discontinue the pursuit of JCC's claims against Geminex. Thereafter, Arthur Leon, Barry Leon and their attorney, Jeremiah Gutman, being a majority of the five persons named in the June 26th Agreement, voted to abandon the pursuit of JCC's claim against Geminex. Couri dissented from this decision and has undertaken this task on his own. Barry Leon testified, without contradiction, that the legal expenses incurred by Arthur Leon totalled $140,211.27, as reflected on the schedule of expenditures in evidence. Trial Exhibit C.

16. The objection to the claims filed by Arthur Leon, Barry Leon and LTS is based on the theory that the general releases which they executed released all claims against the debtor except those claims specified in the June 26th Agreement and that any balance due under the June 26th Agreement was without recourse to the debtor because the claimants agreed, instead, to accept a personal confession of judgment from Couri, not to exceed $180,-000.00.

## DISCUSSION

Pursuant to 11 U.S.C. § 502(a), a properly filed proof of claim is deemed allowed unless a party in interest objects. This provision is a codification of the well-settled practice, as expressed by Mr. Justice Holmes, of "treating a sworn proof of claim as some evidence, even when it is denied." *Whitney v. Dresser*, 200 U.S. 532, 536, 26 S.Ct. 316, 317, 50 L.Ed. 584 (1906). Such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case. *Simmons v. J.J. Savel (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985); *Global Western Development Corp. v. Northern Orange County Credit Service, Inc.*, 759 F.2d 724, 727 (9th Cir.1985); *In re Gorgeous Blouse Co., Inc.*, 106 F.Supp. 465 (S.D.N.Y.1952). If the objecting party rebuts the claimant's *prima facie* case, "it is for the claimant to prove his claim, not for the objector to disprove it." *Gorgeous Blouse*, 106 F.Supp. at 465. *Accord, In re Greene*, 71 B.R. 104 (Bankr. S.D.N.Y.1987); *In re Anchorage Boat Sales, Inc.*, 29 B.R. 275, 277 (Bankr. E.D.N.Y.1983); *In re Georg Jensen, Inc.*, 1 B.R. 239, 245 (Bankr.S.D.N.Y.1979).

In the present case, the debtor and Couri rebutted the claimants' *prima facie* case by presenting some evidence in support of their position that the parties agreed on June 26, 1989 that the debtor's prior obligations to Arthur Leon were to be treated as without recourse and in any event, released in exchange for, among other things, the personal confession of judgment issued by Couri. The claimants, therefore, were required to sustain their burden of proving their claims by a preponderance of the evidence.

The claimants established that pursuant to paragraph 4 in the June 26th Agreement, the debtor acknowledged that it was then obligated to Arthur Leon in the amount of $320,000.00 for loans to Couri and the debtor. In the November 9, 1989 letter agreement, the debtor acknowledged that Arthur Leon had already paid $50,-000.00 in legal fees to the California law firm with respect to the Geminex litigation and that Arthur Leon agreed to advance an additional $125,000.00 to the law firm, together with out of pocket expenses up to $25,000.00. Trial Exhibit A. The total legal fees incurred by Arthur Leon for the

California litigation against Geminex amounted to $140,211.40. Trial Exhibit C. Additionally, the June 26th Agreement acknowledges a $27,000.00 obligation to LTS for accounting fees. June 26th Agreement, at ¶ 7.

The objectants argue that the releases which the claimants executed simultaneously with the June 26th Agreement released all of the debtor's obligations to the claimants other than those rights and obligations expressed in the June 26th Agreement. Furthermore, the objectants contend that the June 26th Agreement imposed no obligations upon the debtor other than to distribute any payments that might be realized from the Geminex litigation. To the extent there was a deficiency in repayments to the claimants, Couri was to issue a confession of judgment to them in the sum of $180,000.00. Thus, the objectants contend that the June 26th Agreement and the simultaneous execution of general releases by the parties had the effect of transforming the debtor's indebtedness to the claimants into a nonrecourse obligation.

The flaw in the objectants' position is the fact that the general releases executed by the claimants excepted "the rights and obligations of the parties" under the June 26th Agreement. In the June 26th Agreement, the debtor expressly acknowledged that the debtor owed Arthur Leon $320,000.00 for loan advances and $27,000.00 to LTS for accounting services. Additionally, the June 26th Agreement also recognized that Arthur Leon was going to advance up to $100,000.00 in legal fees to fund the Geminex litigation. Pursuant to the November 9, 1989 agreement, the debtor acknowledged that Arthur Leon had already advanced $50,000.00 in legal fees and agreed that he would advance an additional $125,000.00 for such legal fees. The total legal fees advanced by Arthur Leon for the Geminex litigation amounted to $140,211.27. Therefore, the principal obligations of the debtor to Arthur Leon and LTS, which were acknowledged by the debtor in the June 26th Agreement and which were excepted from the simultaneous releases executed by the claimants, amounted to $487,211.27, exclusive of interest.

The fact that Couri agreed to issue a confession of judgment to the claimants in the sum of $180,000.00 in the event that the recovery, if any, from the Geminex litigation was insufficient to satisfy the debtor's acknowledged obligations to the claimants, does not mean that the debtor's obligations to the claimants were thereby transformed into nonrecourse debts. Although the June 26th Agreement did not create any independent obligations on the part of the debtor to the claimants which would survive the general releases which they issued, the Agreement did acknowledge the existence of the debtor's obligations to Arthur Leon and LTS for previous advances in the sum of $320,000.00, accounting fees totalling $27,000.00 and legal fees incurred and to be incurred for the Geminex litigation. These obligations enumerated in the June 26th Agreement were specifically excepted from the scope of the general releases issued by the claimants. In the event that the Geminex litigation did not result in a repayment of these obligations, Couri agreed as an additional inducement to the claimants that he would give them his personal confession of judgment for $180,000.00. In such case, the debtor's obligations to the claimants would simply continue to exist, but would be reduced by any recovery they might realize under Couri's confession of judgment. There is nothing in the June 26th Agreement to support the position that Couri's confession of judgment was intended as an exchange for the release of the claimant's unsatisfied claims against the debtor. The only releases in evidence expressly excepted those obligations of the debtor to the claimants which were specified in the June 26th Agreement. There was nothing in the general releases or the June 26th Agreement which even hinted that the claimants agreed to relinquish any portion of the obligations of the debtor to them in exchange for a $180,000.00 confession of judgment from Couri.

Accordingly, the objections to the claimants' proof of claim are denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 28 U.S.C. 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The claimants have sustained their burden of proof by a preponderance of the evidence that the debtor is obligated to them as follows:

(c) To Arthur Leon for advances in the sum of $320,000.00, together with interest at the rate of 12% per annum to January 2, 1992, the date of the filing of the debtor's Chapter 7 petition.

(b) To LTS for accounting fees in the sum of $27,000.00.

(c) To Arthur Leon for legal fees advanced towards the Geminex litigation in the sum of $140,211.40, together with interest at prime plus 2 percent per annum, plus a sum equal to 10 percent thereof, as specified in the June 26, 1989 agreement, up to January 2, 1992.

3. The objections to the claimants proof of claim is denied to the extent such claim is allowed as stated above.

SETTLE ORDER on notice.